# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al,*

       Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al,*

       Defendants.

Civil Action No. 1:25-cv-00943 (TNM)

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

STATEMENT REGARDING FED. R. CIV. P. 65(a)(2)................................................. 4

STANDARD OF REVIEW ............................................................................................. 5

I.   PLAINTIFFS FAIL TO DEMONSTRATE A REASONABLE LIKELIHOOD OF
     SUCCESS ................................................................................................................ 5

A.   Plaintiffs Lack Standing to Pursue the Relief Sought by the Proposed Preliminary
     Injunction. .............................................................................................................. 5

B.   The IFR Is A Procedural Rule Excepted From The APA's Notice And Comment
     Requirement............................................................................................................ 15

C.   The IFR is not Arbitrary or Capricious.................................................................... 21

D.   The IFR is Consistent with the Longstanding Statutory Registration Requirements. ........... 23

E.   Plaintiffs' Claims that the IFR Fails to Acknowledge Its Impact is Belied by the
     Text of the IFR........................................................................................................ 24

F.   DHS Provided a Reasonable Basis for the IFR and a Clear Method for Complying
     with the Statutory Registration Requirement, and It Adequately Considered Costs............. 25

II.  THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR
     DEFENDANTS ........................................................................................................ 27

III. IF THE COURT ISSUES A PRELIMINARY INJUNCTION OR RESTRANING
     ORDER, THE COURT SHOULD SET BOND UNDER FED. R. CIV. P. 65(c). ................ 28

CONCLUSION............................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Abigail All. for Better Access to Developmental Drugs v. Eschenbach*,
    469 F.3d 129 (D.C. Cir. 2006) ................................................................... 6, 9

*Action All. of Senior Citizens of Greater Phila. v. Heckler*,
    789 F.2d 931 (D.C. Cir. 1986) ..................................................................... 10

*AFL-CIO v. NLRB*, 57 F.4th 1023 (D.C. Cir. 2023) ................................... 15, 16, 19, 20

*AILA v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000) ............................................................. 11

*Am. Anti-Vivisection Soc'y v. USDA*, 946 F.3d 615 (D.C. Cir. 2020) ......................... 10

*American Hospital Ass'n v. Bowen*, 834 F.2d 1037 (D.C.Cir.1987) ...................... 15, 19

*Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219 (D.C. Cir. 2024) ................ 10

*Arizona All. For Retired Ams. v. Mayers*, 117 F.4th 1165 (9th Cir. 2024).................. 10

*Ass'n of Immigr. Att'ys v. I.N.S.*, 675 F. Supp. 781 (S.D.N.Y. 1987)............................. 4

*Batterton v. Marshall*, 648 F.2d 694 (D.C. Cir. 1980) ................................................ 15

*Catholic Leg. Immig. Network, Inc. v. Exec. Off. for Immig. Rev.*,
    513 F.Supp. 3d 154 (D.D.C. 2021) ............................................................... 9

*Center for Biological Diversity v. Bernhardt*, 490 F. Supp. 3d 40 (D.D.C. 2020)................. 8, 14

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)........................ 5

*Cherokee Nation v. U.S. Dep't of the Interior*, 643 F. Supp. 3d 90 (D.D.C. 2022)..................... 13

*Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388 (1987) ...................................................... 12

*Ctr. for L. & Educ. v. Dep't of Educ.*, 396 F.3d 1152 (D.C. Cir. 2005) ........................ 6

*Ctr. For Responsible Sci. v. Gottlieb*, 346 F.Supp 3d 29 (D.D.C. 2018)........................ 8

*Delta Constr. Co. v. EPA*, 783 F.3d 1291 (D.C. Cir. 2015) ........................................ 13

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1 (D.C. Cir. 2011) ................... 18

*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021) ............................................ 21

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ..................................... 6, 8, 13

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015)........................... 8

*Gill v. Whitford*, 585 U.S. 48 (2018)..................................................................... 7

*Grand Council of Crees (of Quebec) v. FERC*, 198 F.3d 950 (D.C. Cir. 2000)........................... 12

*Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192 (D.D.C. 2010).............................. 5

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977) ............................. 10

*INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*,
510 U.S. 1301 (1993)........................................................................................ 12

*James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277 (D.C. Cir. 2000) ................. 15, 18, 19

*JEM Broad. Co., Inc. v. FCC*, 22 F.3d 320 (D.C. Cir. 1994) ................................. 15, 16

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ........................................................... 11

*Kumari v. I.N.S.*, 979 F.2d 855 (9th Cir. 1992) ...................................................... 4

*Lamoille Valley R. Co. v. I.C.C.*, 711 F.2d 295 (D.C. Cir. 1983)................................ 18

*League of Women Voters of the U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) .................... 5, 10

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................ 7, 13, 15

*Maryland v. King*, 567 U.S. 1301 (2012) ............................................................... 28

*Melara v. Mayorkas*, 663 F. Supp. 3d 1158 (C.D. Cal. 2021)...................................... 4

*Michigan v. EPA*, 576 U.S. 743 (2015) ................................................................. 21

*Moran Maritime Assocs. v. United States Coast Guard*, 526 F.Supp. 335 (D.D.C.1981),
aff'd, 679 F.2d 261 (D.C.Cir.1982)................................................................... 24

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)................................................................................... 21, 26

*N.W. Immigrant Rights Project v. U.S. Citizenship and Immig. Services*,
496 F. Supp. 3d 31 (D.D.C. 2020)..................................................................... 9

*Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir. 1979) ........................................ 3

*Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77 (D.D.C. 2013)..................................... 19

*Neighborhood TV Co., Inc. v. FCC*, 742 F.2d 629 (D.C. Cir. 1984)............................. 20

*Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032 (9th Cir. 1994) ................ 29

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................................ 28

*Pacific Shrimp Co. v. United States,* 375 F.Supp. 1036 (W.D.Wash.1974) ................................ 25

*People for the Ethical Treatment of Animals v. USDA*, 797 F.3d 1087 (D.C. Cir. 2015) ............. 9

*Pub. Citizen v. Dep't of State*, 276 F.3d 634 (D.C. Cir. 2002) ......................................... 17, 18, 19

*Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500 (D.C. Cir. 2016) ........................................... 5

*Ranger v. FCC*, 294 F.2d 240 (D.C. Cir. 1961) ........................................................... 18

*R-CALF v. U.S. Dep't of Agriculture, et al.*, CV 20-2552 (RDM),
   2025 WL 947475 (D.D.C. Mar. 28, 2025) ................................................................ 6

*Rusk v. Cort*, 369 U.S. 367 (1962) ........................................................................ 12

*Sessions v. Morales-Santana*, 582 U.S. 47 (2017) ...................................................... 11

*The Continuum Co., Inc. v. Incepts, Inc.*, 873 F.2d 801 (5th Cir. 1989) ...................................... 28

*Warshauer v. Chao*, No. CIV.A.4:06CV0103HLM,
   2008 WL 2622799(N.D. Ga. May 7, 2008),
   aff'd sub nom. *Warshauer v. Solis*, 577 F.3d 1330 (11th Cir. 2009) ........................................ 24

*Washington Tour Guides Ass'n v. Nat'l Park Serv.*, 808 F.Supp. 877 (D.D.C.1992) ................ 24

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ................................................... 28

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008) ............................................... 5, 27

**Statutes**

18 U.S.C. § 3559 ............................................................................................. 4

18 U.S.C. § 3571 ................................................................................. 3, 4, 12, 22

5 U.S.C. § 553(b) ......................................................................................... 15

5 U.S.C. § 702 ............................................................................................. 12

5 U.S.C. § 706(2)(A) .................................................................................... 21

8 U.S.C. § 1201(b) ................................................................................. 2, 7, 11

8 U.S.C. § 1227 .................................................................................................................. 4

8 U.S.C. § 1301 ............................................................................................................... 2, 11

8 U.S.C. § 1302 ....................................................................................................... 2, 7, 11, 22

8 U.S.C. § 1303(a) .............................................................................................................. 3

8 U.S.C. § 1304 ......................................................................................................... passim

8 U.S.C. § 1305 ........................................................................................................ 3, 11, 22

8 U.S.C. § 1306 ......................................................................................................... passim

8 U.S.C. §§ 1301-1306 .............................................................................................. passim

Public Law 76-670, 54 Stat. 670 ..................................................................................... 2, 23

**Rules**

90 FR 11793-01 (March 12, 2025) ............................................................................ passim

Fed. R. Civ. P. 65(c) ................................................................................................... 1, 4, 28

**Regulations**

8 C.F.R. § 264.1 ........................................................................................................ passim

90 Fed. Reg. 11793, 11795-11796, 11800 ............................................................... passim

Exec. Order No. 14159, Protecting the American People Against Invasion (Jan. 20, 2025), 90 Fed.

Reg. 8443, 8444 (Jan. 29, 2025) ........................................................................... 2, 21, 25

Defendants, by and through the undersigned counsel, respectfully file this memorandum in opposition to Plaintiffs' motion for preliminary injunction (ECF No. 4, "Pl.'s Mot.") and supplemental memorandum in support (ECF No. 4-1, "Pl.'s Supp. Mem."). For the reasons discussed below, the Court should deny Plaintiffs' motion.

## INTRODUCTION

On March 12, 2025, the United States Department of Homeland Security ("DHS") published an Interim Final Rule ("IFR") which simply added a new registration form to a long list of currently acceptable forms for aliens to submit to comply with longstanding statutory registration and fingerprinting requirements. 90 FR 11793-01 (March 12, 2025).

Plaintiffs have moved for emergency relief under the Administrative Procedure Act ("APA") seeking a stay of the effective date of the IFR or, in the alternative, to enjoin the IFR. Plaintiffs' motion has no merit.

Plaintiffs fail to demonstrate likelihood of success on the merits: (1) Plaintiffs have not established jurisdiction, (2) the IFR is a rule of agency organization, procedure, or practice ("procedural rule") not subject to notice and comment rulemaking procedures, and (3) the IFR is not arbitrary and capricious. Plaintiffs fail to establish irreparable harm because their alleged harms are too speculative. Lastly, the balance of harms and the public interest weigh in favor of providing aliens with an additional mean to comply with a longstanding statutory requirement. Moreover, in the unlikely event that the Court issues a preliminary injunction, Defendants request that the court set an appropriate bond under Fed. R. Civ. P. 65(c).

For the reasons stated below, the Court should deny Plaintiffs' demand for the extraordinary relief of a preliminary injunction.

## BACKGROUND

The Immigration and Nationality Act ("INA") has long contained statutory requirements for every alien in the United States to register their presence. 8 U.S.C. §§ 1301-1306. The registration requirements were incorporated from the Alien Registration Act of 1940, also known as the Smith Act, and predate the INA. *See* Public Law 76-670, 54 Stat. 670.

On January 25, 2025, President Trump issued an Executive Order directing the Secretary of Homeland Security, in coordination with the Attorney General and the Secretary of State to "(a) Immediately announce and publicize information about the legal obligation of all previously unregistered aliens in the United States to comply with the requirements of [the registration statutes]; (b) Ensure that all previously unregistered aliens in the United States comply with the requirements of [the registration statutes]; and (c) Ensure that failure to comply with the legal obligations of [the registration statutes] is treated as a civil and criminal enforcement priority." Exec. Order No. 14159, Protecting the American People Against Invasion (Jan. 20, 2025), 90 Fed. Reg. 8443, 8444 (Jan. 29, 2025).  On March 12, 2025, DHS published the IFR to allow for the use of a newly created Form G-325R, Biographic Information (Registration) ("G-325R") as a means of registration, and USCIS Proof of Alien G-325R Registration as evidence of registration.  *See* 90 Fed. Reg. 11793, 11795-11796, 11800.

While the Form G-325R has been added to the registration scheme, the registration scheme itself is not new.  Just one of the many available manners through which aliens register is through the visa issuance process. 8 U.S.C. § 1201(b); 8 U.S.C. § 1301. All aliens  14 years of age or older who remain in the United States 30 days or longer and have not been registered or fingerprinted as part of their visa issuance under § 1201(b) must register and be fingerprinted. 8 U.S.C. § 1302.

The Secretary of Homeland Security is directed by statute to "prepare forms for the registration and fingerprinting of aliens," which "shall contain inquiries with respect to (1) the date and place of entry of the alien into the United States; (2) activities in which he has been and intends to be engaged; (3) the length of time he expects to remain in the United States; (4) the police and criminal record, if any, of such alien; and (5) such additional matters as may be prescribed." 8 U.S.C. § 1304(a). The Secretary also has authority to prescribe "special regulations and forms for the registration and fingerprinting of" certain classes of aliens, including "aliens of any other class not lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1303(a); *see also Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir. 1979) (recognizing the use of authority under 1303(a) to require special registration for post-secondary student from Iran).

There are statutory criminal penalties related to registration. Willful failure to register or to be fingerprinted is punishable by a fine of up to $5,000 and imprisonment up to six months. 8 U.S.C. § 1306(a); *see also* 18 U.S.C. § 3571. Filing a registration application "containing statements known by him to be false, or who procures or attempts to procure registration of himself or through another person by fraud" is punishable by a fine of up to $5,000 and imprisonment to six months. 8 U.S.C. § 1306(c); *see also* 18 U.S.C. §§ 1001, 1546. Aliens who have been registered and fingerprinted are to "be issued a certificate of alien registration or an alien registration receipt card." 8 U.S.C. § 1304(d). Aliens 18 years of age and over must carry and be in possession of their alien registration or alien registration receipt card. 8 U.S.C. § 1304(e). Noncompliance is a misdemeanor punishable by a fine of up to $5,000 and imprisonment for not more than thirty days. 8 U.S.C. § 1304(e); 18 U.S.C. §§ 3559(a)(8), 3571(b)(6). Finally, each alien required to be registered under the INA must notify DHS in writing of each change of address and new address within ten days from the date of such change. 8 U.S.C. § 1305(a); 8 C.F.R. §

265.1.  Noncompliance is a misdemeanor punishable by a fine of up to $5,000 and imprisonment for not more than thirty days. 8 U.S.C. §1306(b); 18 U.S.C. §§ 3559(a)(8), 3571(b)(6).  In addition, failure to comply with the change-of-address notification requirements of 8 U.S.C. §1305 is a ground of removability unless the alien establishes that such failure was reasonably excusable or was not willful. *See* 8 U.S.C. § 1227(a)(3)(A).

The regulations currently designate 11 different immigration forms as registration forms. 8 C.F.R. § 264.1(a).  Examples of the forms include an I-94 arrival-departure record, an I-485 adjustment of status application, and an I-95 Crewmen's Landing Permit.  *Id*.  There are 12 items that are evidence of registration.  8 C.F.R. § 264.1(b).  Examples include an I-94 arrival-departure card, an I-551 permanent residence card, an I-766 Employment Authorization Document, or an I-862 Notice to Appear for removal proceedings.  *Id*.  The IFR allows for the submission of a Form G-325R as a means to register under 8 C.F.R. § 264.1(a) and the proof of filing a G-325R as evidence of registration under 8 C.F.R. § 264.1(b).

Various versions of G-325 forms have been used by USCIS and legacy INS to collect biographical information.  *See, e.g., Melara v. Mayorkas*, 663 F. Supp. 3d 1158, 1165 n. 2 (C.D. Cal. 2021); *see also Kumari v. I.N.S.*, 979 F.2d 855 (9th Cir. 1992) (referencing the G-325 in context of review of an asylum decision); *Ass'n of Immigr. Att'ys v. I.N.S.*, 675 F. Supp. 781, 782 (S.D.N.Y. 1987) (referencing the use of form G-325A in conjunction with family-based immigration petitions).  Recently Form G-325A has been used in conjunction with applications for Deferred Action for Childhood Arrivals ("DACA"). https://www.uscis.gov/g-325a (last visited April 3, 2025).

## STATEMENT REGARDING FED. R. CIV. P. 65(A)(2)

At a scheduling conference held on April 1, 2025, the Court asked the parties about the amenability of this case to treatment under Fed. R. Civ. P. 65(a)(2), which provides the Court with

the authority to combine the hearing on the preliminary injunction with a hearing on the merits. The Defendants submit that given the arguments presented below on Plaintiffs' standing and the legal obstacles they fail to overcome, the Court may adjudicate the merits in conjunction with a denial of the preliminary injunction. However, if an administrative record is necessary (and a finding in Plaintiffs' favor would likely require an administrative record before they may prevail), the case should not be decided on the merits.

## STANDARD OF REVIEW

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted. *Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

I.   **PLAINTIFFS FAIL TO DEMONSTRATE A REASONABLE LIKELIHOOD OF SUCCESS**

A.   **Plaintiffs Lack Standing to Pursue the Relief Sought by the Proposed Preliminary Injunction.**

Plaintiff organizations challenge the IFR establishing a new registration form G-325R and requiring aliens to comply with statutory registration and fingerprinting provisions under the INA. They assert claims on behalf of a broad segment of the immigrant population, both legal and undocumented, despite not being directly subject to the IFR themselves. Plaintiffs have failed to

demonstrate how the IFR causes harm to their organizational interests, necessitates the use of their resources to counteract its requirements, or, as in the case of UFW, how any alleged harms it is experiencing are traceable to the IFR.  Since Plaintiffs are not directly affected by the IFR and their concerns are only tangentially related to or inconsistent with the objectives of the alien registration provisions of the INA, they fall outside the "zone of interests" protected by the INA. Consequently, Plaintiffs lack standing to seek their requested prospective relief.

    1.  Plaintiffs have not pleaded a cognizable injury to themselves.

If a litigant lacks standing, a court has no subject-matter jurisdiction and, therefore, lacks constitutional authority to decide the case. *Ctr. for L. & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1156–57 (D.C. Cir. 2005).  "To establish standing, . . . a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).  There are two ways for an organization to establish standing.  *See Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 132 (D.C. Cir. 2006).  First, an organizational plaintiff can bring action "on its own behalf," which is known as "organizational standing."  *Id*.  Second, a plaintiff organization can demonstrate standing by bringing a claim "on behalf of its members," also known as "associational standing."  *Id*.

Here, based on the allegations presented in the Complaint and the Memorandum of Points and Authorities ("Pls.' Supp. Mem."), Plaintiffs failed to establish either organizational or associational standing.  *See, e.g., R-CALF v. U.S. Dep't of Agriculture, et al.*, CV 20-2552 (RDM), 2025 WL 947475 (D.D.C. Mar. 28, 2025) (holding that a plaintiff lacked Article III standing to challenge the USDA's MOU under the APA because the plaintiff failed to show any concrete financial harm to its members caused by the MOUs).  At most, Plaintiffs allege a possible indirect

impact from the IFR effect on aliens whom they seek to engage as prospective clients. But that is simply not the type of "invasion of a legally protected interest" sufficient to support Article III standing. *Gill v. Whitford*, 585 U.S. 48, 65 (2018); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992).

Beginning with organizational standing, Plaintiffs have failed to identify any legally cognizable injury to themselves. While they assert that the IFR "will harm Plaintiff CHILRA's legal and advocacy programs, as well as its hotline" because it will be "overrun with requests for information and needs for legal advice and assistance regarding the IFR's registration requirement," their assertions about the potential fallout from the IFR are speculative and too conjectural to plead injury-in-fact.[1] Compl. ¶¶ 99-102; *see also* Pls' Supp. Mem. at 29-34. Such speculative future events are insufficient to support a conclusion that Plaintiffs have organizational standing to challenge the IFR. Indeed, their argument—that they have standing to challenge the IFR amending USCIS regulations to designate a new registration form G-325R because Plaintiffs provide legal services and education to noncitizens—would in theory allow them to challenge *any* change in policy affecting all aliens in the United States. *See* 90 FR 11793; 8 U.S.C. §§ 1201(b), 1302(a), (b).

The Supreme Court has rejected such attenuated theories of standing. In *All. for Hippocratic Med.*, the Supreme Court held that a group of doctors could not assert standing to challenge agency actions affecting third parties—and in their view, removing protections and

---

[1] MRNY, UFW, and CASA make similar allegations that the new IFR will result in a need for legal advice and assistance that will in turn create a demand for legal services that these organizations will not be able to meet due to the limited resources. Compl. ¶¶ 62 (claiming that "complexity and inconsistency in the rule" presents a "huge challenge to MRNY's staff"), 88 (claiming that UFW members will be harmed by the IFR), 95 (CASA members will "suffer irreparable harm" because of the IFR).

"public safety requirements" that might otherwise apply to those third parties—simply because the doctors might later be called upon to provide medical services to those individuals. . . . ." 602 U.S. at 391–92. Such an "attenuated" theory of standing, the Court reasoned, would improperly allow doctors to challenge virtually any change in policy that might indirectly affect the health or safety of potential patients because it might affect the number of patients they serve, or the time involved in helping those patients. *Id*. There "would be no principled way to cabin such a sweeping doctrinal change" that would allow various groups to challenge policies affecting their potential clients, such as "[t]eachers in border states" "su[ing] to challenge" changes to "immigration policies" that would affect the number of students in their classrooms. *Id*. at 392. The "Court has consistently rejected" such an "approach to standing" "as flatly inconsistent with Article III." *Id*.

Plaintiffs argue that they will face irreparable harm "because the IFR will force it to divert resources from its core business activities of providing immigration legal services." Pls. Supp. Mem. at 33. They suggest that the IFR will undermine their "core function" of providing immigration legal and social services and that it will impose new burdens and costs on Plaintiffs. Compl. ¶ 31; Pls.' Supp. Mem. at 33-34. However, *All. for Hippocratic Med*. held that organizations generally cannot "demonstrate standing" by arguing a policy has "impaired" their "ability to provide services and achieve their organizational missions." 602 U.S. at 394. Instead, "something about the challenged action itself—rather than the organization's response to it—must make the organization's task more difficult." *Ctr. For Responsible Sci. v. Gottlieb*, 346 F.Supp 3d 29, 41 (D.D.C. 2018) (cleaned up). An organization *must* show that the Defendants harmed its interests and that it expended resources to address or mitigate that harm. *See Center for Biological Diversity v. Bernhardt*, 490 F. Supp. 3d 40, 46 (D.D.C. 2020) (*quoting Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015)). This requires evidence of a concrete impact on

the organization's mission and a direct connection between the agency's conduct and the diversion of organizational resources. But, other than speculative assertions of future increases of requests for assistance regarding an obligation already in place, Plaintiffs offer no such evidence here.

Plaintiffs cite no case where a court in this Circuit has held that a legal service nonprofit established a cognizable injury based on a change of law affecting *only* their clients and allegedly making representation of clients more time-consuming or difficult.[2] Pls. Supp. Mem. at 33–34; *cf. People for the Ethical Treatment of Animals v. USDA*, 797 F.3d 1087, 1096 (D.C. Cir. 2015) (including in a long list of the plaintiff's alleged expenses the cost of staff attorneys for unspecified purposes but otherwise not discussing such expenses); *Abigail All. for Better Access to Developmental Drugs*, 469 F.3d at 133 (organization's complaint failed to survive a motion to dismiss where the organization "alleg[ed] that it actively engages in 'counseling, referral,

---

[2] Plaintiffs cite to *Catholic Leg. Immig. Network, Inc. v. Exec. Off. for Immig. Rev.*, 513 F.Supp. 3d 154 (D.D.C. 2021), and *N.W. Immigrant Rights Project v. U.S. Citizenship and Immig. Services*, 496 F. Supp. 3d 31, 79 (D.D.C. 2020), which are inapposite. Markedly, none of the cited cases involved harms arising solely from changes to agency policy that affected *only* the plaintiffs' legal clients. In *Catholic Leg. Immig. Network, Inc.*, the Court held that a nonprofit immigration organization had prudential standing to challenge the EOIR's final rule increasing filing fees because the organization's interests in providing low-cost or *pro bono* legal assistance to immigrants, as governed by the INA, aligned with Congress's intent to ensure access to affordable legal representation in removal proceedings, placing their claims within the INA's zone of interests. 513 F.Supp. 3d at 171. In *N.W. Immigrant Rights Project v. U.S. Citizenship & Immigr. Servs.*, the Court granted a preliminary injunction against the 2020 Fee Rule, finding that the plaintiffs were likely to succeed on their APA claims. 496 F.Supp. 3d 31, 79-80 (D.D.C. 2020). The Court observed that Defendants did not dispute Plaintiffs' assertion of irreparable harm based on their contention that due to increased fees, it would only be able to assist approximately 900 members with the naturalization process, a significant decrease from the 1,500 individuals aided the previous year, which would prevent many members from voting in upcoming elections. *Id.* at 80. That case is distinguishable. Here, Plaintiffs purport to provide services to individuals who are subject to the same registration requirement even in absence of the additional means of compliance provided by the IFR. Further, Plaintiffs here did not provide evidence showing that they would suffer irreparable harm from the amended Form G-325R, rather, they speculate that the IFR will threaten their organizational interests and will necessitate the use of their resources to counteract the Form's requirements.

advocacy, and educational services'" without specifying whether plaintiff provided legal services); *Am. Anti-Vivisection Soc'y v. USDA*, 946 F.3d 615, 619 (D.C. Cir. 2020) (injury found because an agency's inaction—specifically, its failure to promulgate standards regarding the humane treatment of birds—deprived the organization of key information on which its public educational activities depended); *League of Women Voters U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (new voter registration forms requiring proof of citizenship "ma[d]e it more difficult for the Leagues to accomplish their primary mission of registering voters," which "provide[d] injury for purposes both of standing and irreparable harm"); *Action All. of Senior Citizens of Greater Phila. v. Heckler*, 789 F.2d 931, 937 (D.C. Cir. 1986) (concluding that the organizational plaintiff had identified a "direct, adverse impact" from regulations that decreased the flow of statutorily required information and made administrative appellate review "a meaningless process" that would require the organization to resort to the courts). Thus, even if Plaintiffs here might have to shift resources "from one set of pre-existing activities in support of their overall mission to another, new set of such activities," they could not establish organizational injury based on an alleged diversion of future resources. *Arizona All. For Retired Ams. v. Mayers*, 117 F.4th 1165, 1175 (9th Cir. 2024).

Turning next to associational standing, Plaintiffs have failed to make the necessary showing. An association may bring a lawsuit on behalf of its members if certain conditions are met: its members must have standing to sue in their own right, the interests the association seeks to protect must align with its organizational purpose, and neither the claim asserted nor the relief requested requires individual members to participate in the litigation. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1225 (D.C. Cir. 2024) (same). Here, Plaintiffs cannot make this showing because they do not purport to—and cannot—assert third-party standing to bring suit on behalf of

unidentified aliens affected by the IFR whom the IFR now provides an additional way to comply with the statutory registration requirement. "Ordinarily, a party must assert his own legal rights and cannot rest his claim to relief on the legal rights of third parties." *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) (cleaned up). Generally, courts will not recognize standing to assert others' rights unless the third-party plaintiff has "a close relationship with the person who possesses the right [and] there is a hindrance to the possessor's ability to protect his own interests." *Id.* (alteration in original); *see also Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004); *AILA v. Reno*, 199 F.3d 1352, 1364 (D.C. Cir. 2000). Plaintiffs have not identified any covered alien on behalf of whom they are bringing their claims—there are no individuals who object to the new Form G-325R and the IFR and who cannot protect their own interest. Hence, Plaintiffs failed to show that they have associational standing to bring this action.

      2.   <u>Plaintiffs are not within the zone of interest of the INA.</u>

Plaintiffs' claims also fail for lack of standing because the alleged effect of the IFR on their expenditures and legal practices does not fall within the zone of interests of 8 U.S.C. §§ 1201(b), 1302(a), (b), 1304(e), 1305(a), and 1227(a)(3)(A). Compl. ¶¶34-37, 64, 80. Through the federal alien registration scheme, Congress has created a comprehensive system for monitoring the entry and location of aliens within the United States. Congress has provided very specific measures ranging from which aliens must register, see 8 U.S.C. §§ 1201, 1301, when they must register, *see* 8 U.S.C. § 1302, the content of the registration forms and what special circumstances may require deviation, 8 U.S.C. §§ 1303, 1304(a), the confidential nature of registration information, 8 U.S.C. § 1304(b), the circumstances under which an already-registered alien must report his change of address to the government, 8 U.S.C. § 1305, and the penalties for failing to register or failing to notify the government of a change in address, 8 U.S.C. § 1306. Under the statutes, <u>all</u> registered aliens 18 years old and older are required to carry their "certificate[s] of alien registration" or

"alien registration receipt card[s]," subject to punishment of up to thirty days of imprisonment and a monetary fine. 8 U.S.C. § 1304(e); 18 U.S.C. § 3571. Willful failure to apply for registration is a federal misdemeanor, punishable under the registration statute by up to six months of imprisonment and a monetary fine. 8 U.S.C. § 1306(a); 18 U.S.C. § 3571. A plaintiff must be "adversely affected or aggrieved by agency action within the meaning of a relevant statute" to sue under the APA. 5 U.S.C. § 702. And "the interest sought to be protected" must be "arguably within the zone of interests to be protected or regulated by the statute . . . in question." *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 396 (1987) (quoting *Rusk v. Cort*, 369 U.S. 367, 379–380 (1962)). Nothing in the text, structure, or purpose of the INA generally, or 8 U.S.C. §§ 1201(b), 1302(a), (b), 1304(e), 1305(a), and 1227(a)(3)(A), specifically suggests that Congress intended to permit organizations similar to Plaintiffs to contest statutory alien registration and fingerprint requirements based on attenuated effects on their own spending decisions and allocation of resources for education and legal representation of aliens. *See Grand Council of Crees (of Quebec) v. FERC*, 198 F.3d 950, 955 (D.C. Cir. 2000) (citation omitted) (a plaintiff "who is not itself the subject of the agency action is outside the zone of interests only if its interests are 'so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'") (citation omitted)). As Justice O'Connor explained in granting the government's stay application in an immigration case involving similar organizational plaintiffs, organizations that "provide legal help to immigrants" do not satisfy the zone-of-interests test. *INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*, 510 U.S. 1301, 1302 (1993) (O'Connor, J., in chambers). Federal immigration law was "clearly meant to protect the interests of undocumented [aliens], not the interests of organizations." *Id.* at 1305. The fact that an immigration regulation "may affect the way an organization allocates its resources"

12

for representing noncitizens accordingly does not bring the organization "within the zone of interests" that the asylum and withholding statutes protect. *Id.* Similarly, the agency's regulatory provisions, by their terms, provide no further interest to organizations. Accordingly, Plaintiffs are not within the zone of interest of the INA.

      3.  <u>Plaintiff UFW failed to show that the alleged harm is traceable to the IFR.</u>

To establish standing, a plaintiff also must demonstrate that the injury likely was caused or will be caused by the defendant. *See All. for Hippocratic Med.*, 602 U.S. at 380. To satisfy this requirement, a plaintiff must show a "causal connection between the injury and the conduct complained of," meaning that the injury is "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (cleaned up). "Generally, this is a 'but for' test—if some part of the alleged injury would not have occurred but for the challenged action, then the injury is fairly traceable to the challenged action." *Cherokee Nation v. U.S. Dep't of the Interior*, 643 F. Supp. 3d 90, 106 (D.D.C. 2022). "This test is met even if the challenged action is not the most immediate cause, or even a proximate cause, of the injury." *Id.* (internal quotation marks omitted). "But if the injury would occur regardless of the challenged action—say, because some separate action would independently cause it in full—then the fair-traceability test is not met." *Id.*; *see Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1297 (D.C. Cir. 2015). At the pleading stage, a plaintiff's standing to pursue a claim typically turns on "the theory of injury presented in the complaint and the facts alleged in support of the claim." *Cherokee Nation*, 643 F. Supp. 3d at 107 (internal quotation marks omitted). The court's redressability analysis is "virtually always the reciprocal of the second, fair-traceability element." *Id.* at 106 (internal quotation marks omitted).

Here, Plaintiffs' alleged injuries, including UFW's alleged injury, are not "fairly traceable" to the IFR. *Lujan*, 504 U.S. at 560. Specifically, regarding injury-in-fact, UFW must demonstrate that "the agency's action or omission to act injured the organization's interest and . . . [that] the

organization used its resources to counteract that harm." *Ctr. for Biological Diversity*, 490 F. Supp. 3d at 46 (D.D.C. 2020) (quotation omitted). UFW claims that its members would be harmed by the IFR, "both in terms of the potential consequences of registration, as well as the technological barriers it creates." Compl. ¶ 88. According to UFW, some of its members, have limited online access, speak limited English, and have difficulties in using technology. Compl. ¶¶ 89-90; Pls.' Mem. at 30. The complaint alleges that UFW's mission is to "engage[] in collective bargaining, worker education, advocacy, state and federal legislation, and public campaigns." Compl. ¶¶ 9-10. Notwithstanding UFW's efforts to bootstrap their alleged injury to the IFR, the alleged harms—difficulty in registration due to limited online access, language barriers, and technological challenges—are not caused by the IFR but by *pre-existing* conditions among UFW's members. Courts have consistently held that when the causal link between the defendant's action and the plaintiff's injury becomes too attenuated, standing cannot be established. *See Lujan*, 504 U.S. at 560. These barriers are external factors unrelated to the IFR's implementation by USCIS. Despite their assertion of the contrary, Plaintiffs fail to grapple with the fact that the risks faced by their unidentified members or clientele based on their particular difficulties flow, at best, from the statute, not the regulation. That is, even without this amendment to the regulation, any affected members or clients remain under a mandate to register their presence, meaning they may require legal assistance to comply with that requirement. The fact that the agency has provided yet another method for compliance does not change the obligations of its members; rather it merely provides another option for achieving compliance.

Furthermore, the injuries described by UFW are speculative and hypothetical rather than concrete and imminent. Compl. ¶¶ 88-90; Pls.' Supp. Mem. at 22. For instance, potential consequences of registration and technological barriers lack specificity regarding how they directly

result from IFR implementation. And, it is well-established that conjectural or hypothetical injuries fail to meet the standing requirement. *Lujan*, 504 U.S. at 560. In summary, UFW's claims do not establish a sufficiently direct causal link between the IFR and the alleged injuries, nor do they show concrete harm that is traceable to the IFR. These deficiencies undermine UFW's standing under Article III jurisprudence.

### B. The IFR Is A Procedural Rule Excepted From The APA's Notice And Comment Requirement.

The APA generally requires agencies to publish notice of a proposed rulemaking in the Federal Register and allow for a period of public comment. 5 U.S.C. § 553(b). The APA specifically exempts from its notice and comment requirements, as relevant here, "rules of agency organization procedure, or practice." 5 U.S.C. § 553(b)(A); *see AFL-CIO v. NLRB*, 57 F.4th 1023, 1034-35 (D.C. Cir. 2023). Procedural rules are ones that are "primarily directed toward improving the efficient and effective operations of an agency." *AFL-CIO*, 57 F.4th at 1034 (cleaned up). A "'critical feature' of the procedural exception 'is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter *the manner in which the parties present themselves* or their viewpoints to the agency.'" *JEM Broad. Co., Inc. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) (quoting *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980)) (emphasis added). Moreover, although a procedural rule generally may not "encode[] a substantive value judgment or put[] a stamp of approval or disapproval on a given type of behavior," *American Hospital Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C.Cir.1987), "the fact that the agency's decision was based on a value judgment about procedural efficiency does not convert the resulting rule into a substantive one," *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282 (D.C. Cir. 2000).

Here, the IFR is a procedural rule that is not subject to notice and comment rulemaking. To start, the IFR does not "does not itself alter any extant legal duty." *AFL-CIO*, 57 F.4th at 1046. Instead, it is predicated on a statutory registration obligation that Plaintiffs concede stretches back more than eighty years, Pl.'s Supp. Mem. at 2-7, and longstanding agency implementing regulations. *See* 90 Fed. Reg. 11793, 1193-95 (Mar. 12, 2025) (citing 8 U.S.C. §§ 1301-1306 and 8 C.F.R. § 264.1). But, while the registration *requirement* has essentially always existed, certain groups of aliens lacked an adequate or desirable *method* of registration that would lead to acceptable evidence of having registered. *See id*. at 11795 (identifying six different groups, including those who entered without inspection and those who have pending or denied applications for certain forms of relief from removal, as groups who may benefit from the IFR).

Nor does the IFR itself affect individuals' substantive interests or encode any value judgments about their behavior. *See AFL-CIO*, 57 F.4th at 1042 (concluding that a provision was not a procedural rule "because it encodes a substantive value judgment about the type of [union election] observers that best serve" the agency's own policy goals) (cleaned up); *JEM Broad Co.*, 22 F.3d at 326 ("The issue . . . is one of degree, and our task is to identify which substantive effects are sufficiently grave so that notice and comment are needed to safeguard the policies of the APA") (cleaned up). Far from establishing any sort of broad new substantive policy with widespread implications as Plaintiffs would have it, the IFR is nothing more than an improvement in the agency's own procedures, intended to "improve registration outcomes" for different groups of aliens by "add[ing] another method . . . for compliance with existing statutory registration requirements." 90 Fed. Reg. at 11796; *see id*. at 11797 ("This rule fills a gap in registration by

adding an online option to comply with existing statutory registration requirements."). [3]  To do so, the IFR "designate[s] a general registration form in addition to those already identified in the regulations" and that is "available to all unregistered aliens regardless of their status" as a way to "improve registration outcomes for certain groups of aliens."  90 Fed. Reg. at 11795; *see id.* at 11796-97 ("DHS is amending existing regulations to make available another method for aliens to comply with the alien registration requirements of the INA.  The rule seeks to better ensure that all aliens in the United States comply with such requirements."); *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 641 (D.C. Cir. 2002) ("To be sure, the policy does represent a judgment that a date-of-request cut-off promotes the efficient processing of FOIA requests, but a judgment about procedural efficiency cannot convert a procedural rule into a substantive one.") (cleaned up).

---

[3] Indeed, this IFR as an exception to notice and comment rulemaking is by no means alone in the history of 264.1.  In fact, the history of the regulation is replete with similar additions of documents.  *See* 82 Fed. Reg. 94231-01, 94233 (Dec. 23, 2016): (removing NSEERS based on exception to notice and comment as "impracticable, unnecessary or contrary to the public interest."); 81 Fed. Reg. 91646-01 (Dec. 19, 2016) (adopting interim amendments to the regulations form Mar. 27, 2013 without notice and comment as relating to agency procedure); 78 Fed. Reg. 18457-01 (Mar. 27, 2013) (adding online I-94 based on exception for "rules of agency organization, procedure, or practice"); 39 Fed. Reg. 10885 (March 22, 1974) (adding form I-221S (Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien) to § 264.1(b) without notice and comment as "adding a form to the listings"); 36 Fed. Reg. 16646 (June 26, 1973) (new paragraph (h) to 264.1 (permitting use of a copy of Form I-94) without notice and comment because it "grants and exemption"); 35 Fed. Reg. 12268 (July 31, 1970) (adding Form I-485A (Application by Cuban Refugee for Permanent Residence to § 264.1(a) without notice and comment as "relat[ng] to agency procedure."); 30 Fed. Reg. 13862 (November 2, 1965) (amending listing of Forms I-90 (Application by Lawful Permanent Resident Alen for Alen Register Receipt) and I-102 (Application by Nonimmigration alien for Replacement of Arrival Document or for Alien Registration) under Section § 264.1(b) without notice and comment as "relat[ing] to agency procedure"); 26 Fed. Reg. 3455 (Apil 22, 1961) (waived fingerprinting without notice and comment because the amendment "relieve[s] restrictions and confer[s] benefits upon persons affected thereby."); 25 Fed. Reg. 10495 (Nov. 2, 1960) (added the Form I-590 (Registration for Classification as Refugee-Escapee) to § 264.1 without notice and comment as a "relat[ing] to agency procedure and management.")

The IFR then goes on to connect the online submission of the new registration form (Form G-325R) to the agency's existing biometrics procedures. *See id*. at 11795-96. An alien's completion of the G-325R will trigger the agency to commence biometrics processing for those subject to the fingerprinting requirement; once the process is completed, it will result in the agency's provision of a "Proof of Alien Registration" document to the alien as evidence of registration. *See id*. at 11795-96. Thus, because the IFR merely improves existing agency processes to make available an additional method to register, the IFR is primarily directed toward the manner by which aliens "present themselves or their viewpoints to the agency." *Glickman*, 229 F.3d at 280; *see Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 5 (D.C. Cir. 2011) (even "a rule with a 'substantial impact' upon the persons subject to it is not necessarily a substantive rule" (citing *Pub. Citizen*, 276 F.3d at 640-41)); *Lamoille Valley R. Co. v. I.C.C.*, 711 F.2d 295, 328 (D.C. Cir. 1983) (holding that an order changing the schedule for an adjudication, including when parties were to submit briefing, was a procedural rule); *Ranger v. FCC*, 294 F.2d 240, 244 (D.C. Cir. 1961) (while holding that a rule was procedural, noting that "no substantive rights were actually involved by the regulation itself" even if "failure to observe it might cause the loss of substantive rights").

None of Plaintiffs' arguments to the contrary support the conclusion that they are likely to succeed on the merits of their APA claim. Pl.'s Supp. Mem.at 12-18. By and large, Plaintiffs support their position that injunctive relief is required by invoking a broad constellation of alleged policies that are well outside the narrow scope of the IFR itself. *See id*. For example, Plaintiffs point to the number of aliens they believe may be affected, the type of information the G-325R requests, and the financial cost of completing the registration process to both aliens and to the government. Pl.'s Supp. Mem. at 12-14. But "an otherwise-procedural rule does not become a

18

substantive one, for notice-and-comment purposes, simply because it imposes a burden on regulated parties." *Glickman*, 229 F.3d at 281. "[A]gency rules that impose 'derivative,' 'incidental,' or 'mechanical' burdens upon regulated individuals are considered procedural, rather than substantive." *Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77, 107 (D.D.C. 2013); *see Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1051 (D.C. Cir. 1987). And Plaintiffs' repeated invocation of what they believe to be the government's broader policy goals does little to demonstrate any sort of value-laden judgment within the four corners of the IFR, which is the question for the Court here. *See AFL-CIO*, 57 F.4th at 1042; *Pub. Citizen*, 276 F.3d at 641.

Plaintiffs argue that the IFR exposes aliens "to new criminal penalties arising from the registration scheme" itself because, they say, an affirmative defense to prosecution for failing to register would be available but for the IFR. Pl.'s Supp. Mem. at 15. Plaintiffs add that the IFR impinges on the Fifth Amendment's protection against self-incrimination, insofar as completion of the G-325R may lead aliens who entered without inspection to divulge information that may tend to establish guilt in a later-initiated criminal prosecution for illegal entry. Pl.'s Supp. Mem. at 16-17. The first argument fails to account for the fact that, if the IFR is enjoined, the government may still choose to prosecute those who have not registered and the injunction Plaintiffs seek will simply remove the means for some currently unregistered aliens to meet their longstanding statutory registration obligation. . And the second fails to account for the fact that the IFR does not dictate the contents of the G-325R nor does the IFR require any alien to complete the G-325R if they do not wish to.[4] Overall, Plaintiffs' complaints about potential criminal consequences are

---

[4] It bears mentioning that many immigration forms request information about the criminal history of an applicant or petitioner for an immigration benefit, e.g., Form I-485 Part 9, Q23; Form I-589, Part C, Q6

largely speculative and predicated primarily on their extrapolation from alleged policy statements that are untethered to the IFR itself.

Finally, Plaintiffs end essentially where they started: by casting the IFR in the broadest possible terms, as a new obligation to carry proof of registration, with new consequences that they contend attach to citizens and noncitizens alike. Pl.'s Supp. Mem. at 17-18. The Court should flatly reject Plaintiffs' attempt to distort the IFR in this way. As is true of the statutory registration requirement, the obligation to carry proof of registration, and the penalties for failing to do so (which apply only to aliens and not to citizens) were established decades ago in the statute. *See* 8 U.S.C. § 1304(e). In the end, uncertain consequences for an indeterminate number of people outside of any proceedings before the agency are not sufficient to establish that the IFR is anything other than a procedural rule. *See Neighborhood TV Co., Inc. v. FCC*, 742 F.2d 629, 637 (D.C. Cir. 1984) ("In determining whether a rule is substantive, [a court] must look at [the rule's] effect on those interests ultimately at stake in the agency proceeding."); *see also AFL-CIO*, 57 F.4th at 1034-35.

Ultimately, although additional notice and comment are not required, Defendants have welcomed the public's input on the IFR's provisions. *See* 90 Fed. Reg. at 11796 ("DHS . . . welcomes post-promulgation comment on all aspects of this IFR"). But Defendants also believe that the immigration system would benefit from rapid implementation of the rule, which is lawful given that the rule merely offers an additional mechanism for statutory compliance and thus affects agency procedure rather than individual rights or interests. The benefits of rapid implementation include the immediate availability of an online registration option for aliens to meet their longstanding statutory obligation regardless of their immigration status. Further, the benefit of additional public comment alongside practical experience with implementation of the

additional method of registration set forth in the IFR will aid Defendants in promulgating a future final rule.

### C.  The IFR is not Arbitrary or Capricious.

The APA directs that an agency action be set aside if it is arbitrary or capricious. 5 U.S.C. § 706(2)(A).  Contrary to Plaintiffs' argument, Pl.'s Supp. Mem. at 19-28, the promulgation of the IFR is not arbitrary or capricious.

The scope of APA review is narrow and deferential, and a court cannot substitute its judgment for that of the agency. *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency need only articulate "a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (internal quotation and citation omitted).  The agency appropriately relies on its experience in exercising its judgment. *See id.* at 29 ("It is not infrequent that the available data does not settle a regulatory issue[,] and the agency must then exercise its judgment in moving from the facts and probabilities on the record to a policy conclusion.").  Thus, a reviewing court's task is only to determine whether an agency has engaged in "reasoned decisionmaking." *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (internal citation and quotation marks omitted); *see Prometheus Radio Project*, 592 U.S. at 423 ("A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision").

The IFR easily meets that deferential standard.  The IFR was promulgated to provide an additional registration pathway for aliens required to register under the existing statutory framework prescribed in 8 U.S.C. §§ 1301–1306.  90 Fed. Reg. at 11795.  It also serves to partially implement section 7 of Executive Order 14159, Protecting the American People Against Invasion (Jan. 20, 2025), 90 FR 8443 (Jan. 29, 2025).  90 Fed. Reg. at 11795.  Section 7 directs the Secretary,

among other matters, to ensure that all previously unregistered aliens in the United States comply with 8 U.S.C. §§ 1301-1306.  90 Fed. Reg. at 11795.  The IFR is reasonably related to these objectives.

Under 8 U.S.C. § 1302(a), "every alien" 14 years of age or older who remains in the United States for thirty days or longer is subject to registration if not already registered.  Although 8 C.F.R. § 264.1(a) provides forms that satisfy an alien's registration requirements and means of showing evidence of registration, not all aliens who are subject to the registration requirements have a straightforward way to take advantage of those forms.  For example, in some cases, the acceptable evidence of registration at 8 C.F.R. § 264.1(b) is the result of an approved application only, which may leave denied or pending applicants without any acceptable evidence that they have complied with the requirement to register.  The IFR provides a convenient additional method to comply with statutory registration requirements by prescribing a registration form available to all aliens regardless of their status, in addition to the other forms already listed.

This is critical because an alien's willful failure or refusal to apply to register or to be fingerprinted is punishable by a fine of up to $5,000 or imprisonment for up to six months, or both. 8 U.S.C. 1306(a); *see also* 18 U.S.C. 3571.  The same applies to an alien's parent or legal guardian's willful failure or refusal to register.  *Id.*  The IFR simply provides an additional mechanism for aliens to comply with registration requirements.  The IFR does not impose any new registration or fingerprinting obligations separate from the current statutory obligations.  An alien who has previously registered consistent with 8 C.F.R. § 264.1(a), or an alien who has evidence of registration consistent with 8 C.F.R. § 264.1(b), need not register again, although such an alien is subject to ongoing change of address reporting requirements under 8 U.S.C. § 1305(a) and 8 C.F.R. § 265.1.

### D.  The IFR is Consistent with the Longstanding Statutory Registration Requirements.

Mischaracterizing the IFR, Plaintiffs assert that it is a "dramatic and unexplained departure from previous practice."  Pl.'s Supp. Mem. at 20.  In doing so, Plaintiffs ignore that the existing statutory registration requirement is about 85 years old.  Aliens were first required to generally register by the Alien Registration Act of 1940.  *See* Public Law 76–670, 54 Stat. 670.  This law generally required all aliens in the country beyond 30 days to apply to register and to be fingerprinted.  Congress later incorporated these requirements, as amended, in the Immigration and Nationality Act of 1952, Public Law 82-414, 66 Stat. 163.  These requirements appear in their current form at 8 U.S.C. §§ 1301-1306.  The regulations showing the means for complying with the statutory requirements are currently found in 8 C.F.R. § 264.1 and effective as of December 23, 2016.

Thus, the IFR does not change who is subject to the registration requirements or the penalties for noncompliance.  Instead, the IFR simply provides aliens with another means to register.  The IFR is merely providing another convenient alternative and thus is not a departure, let alone a dramatic one, from prior practice.  Instead, it provides all aliens subject to the requirements of 8 U.S.C. §§ 1301-1306 with an avenue by which they may comply with the law.

Plaintiffs assert that DHS's plan to use registration information for law enforcement activities constitutes a new obligation and unexplained departure from previous practice.  Pl.'s Supp. Mem. at 20-21.  However, how DHS uses registration information is outside the scope of the IFR, as the IFR does not purport to change how DHS utilizes registration information.  Importantly, Congress has specified the scope of the information's availability.  *See* 8 U.S.C. 1304(b) (providing that the information provided shall be confidential except "to such persons or agencies as may be designated by the Attorney General.").  As a discretionary matter, the Attorney

General's designation is not subject to review. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). Importantly, information gathered from registration under the new form is subject to the same disclosures as any other form of proof of registration.

### E. Plaintiffs' Claims that the IFR Fails to Acknowledge Its Impact is Belied by the Text of the IFR.

Plaintiffs argue that the IFR fails to consider the implications of enforcement of the IFR, such as the consequences of the registration regime on the alien population and the ability of aliens subject to registration requirements to register, especially those they describe as "particular vulnerable groups." Mot. 21-22. However, DHS expressly considered the aliens anticipated to be affected by the IFR and associated costs to them; including, the time to become familiar with the steps and process to become compliant with the registration requirement, register, and maintain evidence of registration. 90 Fed. Reg. at 11797.

In a similar vein, Plaintiffs complain that the IFR fails to consider the impact of Defendants' plan to effectively enforce the law. Pl.'s Supp. Mem. at 21-23. However, DHS cannot be estopped from fulfilling its duty to enforce the law. *See Washington Tour Guides Ass'n v. Nat'l Park Serv.*, 808 F.Supp. 877, 882 (D.D.C.1992) ( "[T]he government cannot be estopped from fulfilling its duty to protect the public interest in accordance with specific regulations despite prior failure to enforce those regulations."); *Moran Maritime Assocs. v. United States Coast Guard*, 526 F.Supp. 335, 342 (D.D.C.1981) ("[P]rior inaction by the Coast Guard does not now bar the agency from implementing the clear mandate of the regulation and its authorizing statute."), aff'd, 679 F.2d 261 (D.C.Cir.1982); *Warshauer v. Chao*, No. CIV.A.4:06CV0103HLM, 2008 WL 2622799, at *31 (N.D. Ga. May 7, 2008), aff'd sub nom. *Warshauer v. Solis*, 577 F.3d 1330 (11th Cir. 2009) ("Courts repeatedly have held that the Government cannot be estopped from enforcing a law, even if the Government did not enforce the law in the past); *Pacific Shrimp Co. v. United States,* 375

F.Supp. 1036, 1042 (W.D.Wash.1974) ("An administrative agency charged with protecting the public interest, is not precluded from taking appropriate action nor can the principles of equitable estoppel be applied to deprive the public of a statute's protection because of mistaken action or lack of action on the part of public officials.").  Moreover, as stated previously, DHS's use of registration information is outside the scope of the IFR.

For similar reasons, Petitioners' claim that the IFR ignores self-incrimination issues under the Fifth Amendment fails, because again, DHS's use of registration information is outside the scope of the IFR.  Pl.'s Supp. Mem. at 21-22.  Moreover, the IFR expressly takes into consideration law enforcement use of the information provided at registration.  90 Fed. Reg. at 11797-98.

In asserting that the IFR fails to consider its consequences on aliens who have submitted extensive paperwork to the government but have not complied with the registration requirement, Petitioners overlook the reasoning provided by DHS in the IFR.  Pl.'s Supp. Mem. at 22-23.  DHS expressly explained that the general registration option is to provide a registration avenue for those who have applied for a benefit, such as asylum or TPS, but the application itself does not constitute evidence of registration under 8 C.F.R. § 264.1(b).  90 Fed. Reg. at 11795.  And again, the IFR does not change who is required by statute to meet the registration requirements – it only provides aliens with an additional opportunity to do so.

### F.  DHS Provided a Reasonable Basis for the IFR and a Clear Method for Complying with the Statutory Registration Requirement, and It Adequately Considered Costs.

As previously explained, DHS provided a reasonable basis for the IFR; namely, to provide a registration pathway for all aliens required to register under the existing statutory framework proscribed in 8 U.S.C. §§ 1301–1306, and partially implement section 7 of Executive Order 14159, Protecting the American People Against Invasion (Jan. 20, 2025), 90 FR 8443 (Jan. 29, 2025).  90 Fed. Reg. at 11795.  Attacking the IFR as misleading, Plaintiffs claim DHS did not provide enough

reasoning for why DHS believes more aliens will register in light of DHS's law enforcement duties. Mot. 23-24. DHS is not required to write an exegesis but merely must provide a reasonable basis for its action, as it has done. *See State Farm*, 463 U.S.at 43. Moreover, as explained in the IFR, the general registration method is merely an additional means to allow aliens to comply with the existing statutory registration requirements and emphasizes that Executive Order 14159 requires DHS to enforce compliance with these requirements. 90 Fed. Reg. at 11795-96.

Plaintiffs suggest that the IFR's stated purpose of improving compliance with statutory registration requirements is a mask for its true law enforcement purpose. Pl.'s Supp. Mem. at 24. However, this alleged mask is markedly transparent; the IFR explains that an expected benefit of the IFR is to improve law enforcement efficacy. 90 Fed. Reg. at 11797. And again, DHS's use of registration information is outside the scope of this IFR as the IFR does not purport to change the use of such information.

Missing the mark once again, Plaintiffs assert that the IFR is opaque as to whether aliens who register but do not have their fingerprints taken will be considered compliant with the statutory registration requirements. Pl.'s Supp. Mem. at 24-26. However, as Plaintiffs acknowledge, the IFR expressly does not impose "any new registration or fingerprinting obligations separate from the obligations already contained in the [statute]." 90 Fed. Reg. at 11796-97. The IFR also acknowledges that consistent with the Secretary's discretionary authority under the INA, the Secretary has waived the fingerprinting requirement in certain cases; the IFR thus acknowledges that not all aliens who register will necessarily also have their fingerprints taken. 90 Fed. Reg. at 11793, 11795.

Plaintiffs protest that the IFR does not explain methods of complying with the requirement that an alien carry proof of his registration other than a hard copy print out. Pl.'s Supp. Mem. at

26. However, the IFR acknowledges that aliens will incur some cost in maintaining evidence of registration in the mode prescribed by DHS. 90 Fed. Reg. at 11797.

Decrying the complexities of immigration law and the burden of filing a FOIA request, Petitioners complain of the difficulty some aliens may have of knowing they are registered. Pl.'s Supp. Mem. at 26-27. Importantly, that is not a function of the IFR; rather, that is an issue an alien may face notwithstanding the IFR. Fortunately, the IFR provides a solution: any alien questioning his or her status may use the general registration option, which is available to "all aliens regardless of their status, *in addition* to the other forms already listed." 90 Fed. Reg. at 11796 (emphasis added). While an alien registered consistent with 8 C.F.R. § 264.1(a) or has evidence of registration consistent with 8 C.F.R. § 264.1(b) *need not* register again, the alien is not prohibited from doing so if he is uncertain about whether he has complied with the registration requirement. 90 Fed. Reg. at 11796.

Finally, Plaintiffs' claim that the IFR is arbitrary and capricious because it does not adequately consider and weigh the costs of implementation to the public and the government. Pl.'s Supp. Mem. at 27-28. This claim is belied by the face of the IFR, which expressly considers the costs to aliens and to DHS. 90 Fed. Reg. at 11796. Moreover, the IFR solicits comment on a potential biometrics fee to offset the cost to DHS. 90 Fed. Reg. at 11796.

Accordingly, Plaintiffs' efforts notwithstanding, the IFR easily survives the APA's narrow and deferential arbitrary and capricious standard. DHS provided a rational basis for the IFR, and the APA does not permit the Plaintiffs to substitute their policy views for DHS's.

## II.  THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR DEFENDANTS

The party seeking a preliminary injunction must show that the balance of equities tips in their favor and that the injunction is in the public interest. *Winter*, 555 U.S. at 20. A court "'should

pay particular regard for the public consequences'" of injunctive relief. *Id.* at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)); *cf. Nken v. Holder*, 556 U.S. 418, 435 (2009) (holding that, in the context of a stay, assessing the harm to the opposing party and weighing the public interest "merge when the Government is the opposing party").

An injunction here will continue to leave multiple classes of aliens, including some juveniles and individuals with pending applications for relief, without a convenient mechanism to meet their statutory registration obligation.. *See* 8 U.S.C. §§ 1304(e), 1306(a). Moreover, an injunction prevents Defendants from augmenting its own procedures in an effort to ensure that all unregistered aliens, regardless of their status, have an option for registration so as to give full effect to the statutory registration requirements established by Congress more than eighty years ago. "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cleaned up).

Thus, the balance of the equities weighs in favor of Defendants, and Plaintiff's request for injunctive relief should be denied.

### III. IF THE COURT ISSUES A PRELIMINARY INJUNCTION OR RESTRANING ORDER, THE COURT SHOULD SET BOND UNDER FED. R. CIV. P. 65(c).

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). A bond posted for a preliminary injunction is viewed as a contract in which "the court and plaintiff 'agree' to the bond amount as the 'price' of a wrongful injunction." *The Continuum Co., Inc. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989). As a result of the posting of the bond, a presumption arises that damages

will be awarded from those posted bond amounts in order for defendants "to receive compensation for their damages in cases where it is later determined that a party was wrongfully enjoined." *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994).

Here,, Plaintiffs have sought an injunction to halt the implementation of a regulation designed to enhance USCIS procedures after the expenditure of considerable resources to develop a form, implement an online system for receipt and processing of request. USCIS had submitted, and the Office of Management and Budget approved Form G-325R on March 5, 2025, which the IFR uses. *See* reginfo.gov, OMB Control No. 1615-0166. The injunction is likely to create additional problems for DHS as it continues to work to comply with the express dictates of Congress in providing avenues for aliens to lawfully register.  Even after any dissolution of the preliminary injunction, the agency will need to go to considerable expense to again inform the public of its regulation and prepare for the receipt of documents anew.  Therefore, the Court should deny Plaintiffs' request for emergency relief.

*    *    *

**CONCLUSION**

The Court should deny the motion for a temporary restraining order.

Dated: April 4, 2025

Respectfully submitted,
EDWARD R. MARTIN, JR.
D.C. Bar No. 481866
United States Attorney

*/s/ Kartik N. Venguswamy*
KARTIK N. VENGUSWAMY
D.C. Bar No. 983326
Assistant United States Attorney
601 D Street, NW
Washington, D.C. 20530
Tel: (202) 252-1790
kartik.venguswamy@usdoj.gov

*Counsel for United States of America*