**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, et al.,<br>          *Plaintiffs*<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br>          *Defendants*. | Case No. 1:25-cv-00943 (TNM) |

**PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL AND
INCORPORATED MEMORANDUM OF LAW**

1

As both the Court and Defendants recognized, the Interim Final Rule (IFR) on noncitizen registration, 90 Fed. Reg. 11793 (Mar. 12, 2025), marks a dramatic change in course by executive action, implementing universal mandatory registration for the first time and exposing millions of noncitizens who previously had no method to register to new registration, fingerprinting, and carry requirements on the threat of criminal prosecution. *See* Mem. Order (ECF No. 27) at 2-4; Ex. A (Hrg. Tr.) 22:5-8 (The Court: "[T]his is a pretty big switcheroo from what's been happening, and that the case law and the [Administrative Procedure Act] would require something more than what you've done to implement this rule."); 43:6-11 (government counsel admitting that prior to the IFR, there was no "universal form that would apply across the board" for all undocumented immigrants to register). The IFR implements this change without engaging in notice and comment rulemaking and without the reasoned decisionmaking required under the Administrative Procedure Act (APA).

Nevertheless, the Court denied Plaintiffs' motion for a preliminary injunction without reaching the merits, finding instead that Plaintiffs had failed to establish standing. Mem. Order at 1. Federal prosecutions under the registration statute have begun. *See* Ex. B (multiple federal criminal complaints for willful failure to register under 8 U.S.C. § 1306(a) filed since April 17, 2025); Ex. O. (Decl. of Milagros Cisneros) ¶¶ 3-4. Pursuant to Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1)(C), Plaintiffs respectfully request that the Court enter an injunction to preserve the status quo ante and protect Plaintiffs and their members from irreparable harm, while they appeal the Court's denial of the preliminary injunction.[1]

---

[1] Plaintiffs filed a notice of appeal on April 24, 2025. Pursuant to LCvR 7(m), Plaintiffs' counsel conferred with counsel for Defendants, who indicated that they oppose this motion.

**LEGAL STANDARD**

The standards for evaluating a motion for an injunction pending appeal under Federal Rule of Civil Procedure 62(d) are "substantially the same as those for issuing a preliminary injunction," meaning that the movant generally must show that (1) "they are likely to succeed on the merits," (2) "they are likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in their favor," and (4) "an injunction is in the public interest." *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 324 (D.D.C.) (quoting *Amgen Inc. v. Azar*, No. 17-cv-1006, 2018 WL 1990521, at *1 (D.D.C. Feb. 22, 2018)) (cleaned up), *preliminary injunction granted in part*, 755 F. App'x 1 (D.C. Cir. 2018) (per curiam). Where, as here, a government entity is the opposing party, the last two factors merge. *See, e.g., Trump v. Comm. on Oversight & Reform of U.S. House of Reps.*, 380 F. Supp. 3d 76, 105 (D.D.C. 2019), *vacated on other grounds by Trump v. Mazars USA, LLP*, 832 F. App'x 6 (D.C. Cir. 2020) (per curiam). While rare, Rule 62(d) by its own terms necessarily envisions situations in which a district court that has denied an injunction still grants an injunction pending appeal. *See MediNatura, Inc. v. FDA*, No. 20-cv-2066 (RDM), 2021 WL 1025835, at *6 (D.D.C. Mar. 16, 2021).

**ARGUMENT**

**I.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.**

   **A.     Defendants Have Violated the APA**

The IFR plainly violates the APA. As the Court observed, the IFR represents a significant change in policy that alters the rights and interests of parties such "that the case law and the APA would require something more than what [Defendants have] done to implement this rule." Ex. A (Hrg. Tr.) at 22:6-8; *see* Mem. Order at 2-4. The IFR violates the procedural requirements of the

APA by foregoing notice and comment prior to implementation. *See* Mem. Supp. Stay or Prelim. Inj. (ECF No. 4-1) at 10-19; Mem. on Reply (ECF No. 20) at 9-14. And the IFR violates the substantive requirements of the APA because it is arbitrary and capricious. *See* Mem. Supp. Stay or Prelim. Inj. at 19-28; Mem. on Reply at 14-18. Thus, Plaintiffs exceed the requirements for likelihood of success on the merits.

### B. Plaintiffs Have Established Associational Standing

Plaintiffs have adduced sufficient evidence to establish associational standing through sworn declarations submitted by representatives of each membership organization. Plaintiffs maintain that those declarations, which attest under the penalty of perjury to basic biographical details of individual members known to the declarants, are sufficiently reliable evidence at the preliminary injunction stage. *See* Notice of Supp. Auth. (ECF No. 26) (citing cases). However, in light of the Court's concerns about not having declarations from members themselves, Mem. Order at 13-14—which were not raised by Defendants and instead by the Court initially during the hearing, *see* Ex. A (Hrg. Tr.) at 5-6, 19—Plaintiffs have obtained individual declarations from their members. *See* Exs. C-N (Member Declarations of Plaintiffs CHIRLA, UFW, MRNY, and CASA). These pseudonymous declarations are more than sufficient evidence to establish associational standing. *See, e.g., Make the Rd. New York v. McAleenan*, 405 F. Supp. 3d 1, 32 (D.D.C. 2019)*, rev'd on other grounds and remanded sub nom. Make the Rd. New York v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020) (finding pseudonymous member declarations sufficient for associational standing); *NAACP v. Trump*, 298 F. Supp. 3d 209, 225 (D.D.C.), *adhered to on denial of reconsideration,* 315 F. Supp. 3d 457 (D.D.C. 2018), and *aff'd and remanded sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020) (same); *see also Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 772-73 (11th Cir. 2024)

4

(same); *Speech First, Inc. v. Shrum,* 92 F.4th 947, 950 (10th Cir. 2024) (same, citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 458–59 (1958)). Plaintiffs maintain that these individual redacted declarations are more than enough at this stage of the litigation. However, Plaintiffs are prepared to further make unredacted declarations available under seal to the Court for *in camera* review, if requested. Alternatively, if after negotiation the parties can agree on the terms of a protective order with adequate protection, unredacted declarations can be made available to Defendants. Either way, there can be no serious doubt about the basic facts Plaintiffs have adduced, and they have established a "substantial likelihood of standing" sufficient for interim relief. Mem. Order. at 1.

Based on those undisputed facts, and under binding Supreme Court precedent, these members have standing as directly regulated parties who must, for the first time, submit a lengthy registration form that requires information on a range of sensitive matters, travel to a federal building to provide biometrics, and carry proof of registration at all times or face arrest and federal prosecution. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) ("Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So in those cases, standing is usually easy to establish."); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992) (where a person is "an object of the [government] action . . . there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it"); *City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018) ("This imposition of new regulatory obligations, in and of itself, is sufficient to establish standing.") *State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015) (Kavanaugh, J.) ("The Supreme Court has stated that 'there is ordinarily little question' that a regulated individual or

5

entity has standing to challenge an allegedly illegal statute or rule under which it is regulated.") (quoting *Lujan*, 504 U.S. at 561-62). Here, Plaintiffs' members are directly regulated parties challenging a rule under which they are regulated.

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021), on which the Court relied, is not to the contrary. *See* Mem. Order at 15. *TransUnion* did not involve directly regulated parties. Instead, it held that individuals Congress had provided with a statutory cause of action to challenge a credit agency's failure to comply with the Fair Credit Reporting Act must also have a concrete injury to establish standing under Article III. *See* 594 U.S. at 423-24; *id.* at 427 (rejecting argument that an "uninjured plaintiff" may sue "to ensure a defendant's compliance with regulatory law") (internal quotation omitted). But this is not a case where the Court must adjudicate a "hypothetical or abstract dispute[]" nor would it produce an "advisory opinion[]." *Id.* at 423-24. Plaintiffs' members are indisputably subject to a concrete and particular harm—the IFR directly imposes a series of new legal obligations—that can be redressed by an order enjoining the IFR. This is enough for standing. *See All. for Hippocratic Med*, 602 U.S. at 382.

Yet Plaintiffs have shown more injuries from the registration process itself. Defendants' own estimates show an average of $90 in wage loss per individual for the nearly two hours needed to complete the new process, and an average of $118 million in annual lost wages for affected individuals. *See* Supporting Statement for Biographic Information (Registration), OMB Control No.: 1615-NEW, https://tinyurl.com/2cs24kmp (click on Statement A, G-325R-001_NEW_EMGCY_SPTSTMT.v2.docx); 90 Fed. Reg. at 11799. Form G-325R requires a wide range of sensitive, personal information, including details about any uncharged criminal conduct, personal activities, and family members. *See* Form G-325R Biographic Information (Registration), OMB: 1615-0166, https://tinyurl.com/3txjv5an [hereinafter Form G-325R]. These

6

additional harms are indisputably sufficient for standing. *See TransUnion*, 594 U.S. at 425 ("monetary injury" and "disclosure of private information" both "traditionally recognized as providing a basis for lawsuits in American courts"); *see also Uzuegbunam v. Preczewski,* 592 U.S. 279, 292 (2021) ($1 damages sufficient for standing); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'").

Moreover, some members are unable to access the IFR registration process *at all*, because the IFR provides that it is only available online, and only in English, exposing them to criminal penalties for either failure to register or for errors in the registration. Mem. Supp. Stay or Prelim. Inj. at 30-31; Mem. on Reply at 4-5; Ex. C (Decl. of UFW Member "Ana") ¶¶ 5, 8; D (Decl. of UFW Member "Gloria") ¶¶ 7, 9.

Members who have are seeking statutorily authorized immigration benefits that do not count as registration forms must now use this separate registration process that Defendants have stated is for mass deportation, placing them at imminent risk of removal and the inability to pursue congressionally authorized immigration relief for which they are eligible. Mem. Supp. Stay or Prelim. Inj. at 31-32; Ex. F (Decl. of CHIRLA Member "Ursela") ¶ 4, Ex. G (Decl. of CHIRLA Member "Tiana") ¶ 5; Ex. H (Decl. of MRNY Member "Guvelia") ¶ 9.

Finally, the IFR threatens constitutionally protected interests of Plaintiffs' members. Member Ursela, though 17 at the time of her illegal entry, certainly can be prosecuted under 8 U.S.C. § 1325 – either in delinquency proceedings until she turns 21, or in adult proceedings thereafter. *See* 18 U.S.C. § 5031. Defendants have promised to vigorously enforce this particular offense and indeed, have begun doing so across the country. Memorandum from the Attorney General re: General Policy Regarding Charging, Plea Negotiations, and Sentencing, at 3 (Feb. 5,

2025), https://tinyurl.com/25wr8sd5; *see also* Off. of the U.S. Att'ys, U.S. Dep't of Just., Prosecuting Immigration Crimes Report - 8 U.S.C. § 1325 Defendants Charged (Apr. 9. 2025), https://www.justice.gov/usao/media/1395936/dl?inline (reporting 1,596 prosecutions in March 2025, a 240 percent increase compared to January 2025). And individuals in delinquency proceedings have a Fifth Amendment right against self-incrimination, just like those in adult criminal proceedings. *In re Gault*, 387 U.S. 1, 49 (1967).

While the Court observed that Ursela may not yet have a ripe Fifth Amendment challenge to the IFR, Mem. Order at 18, Plaintiffs are not seeking an injunction under the Fifth Amendment. Mem. Supp. Stay or Prelim. Inj. at 10-19. Nor is it necessary for Plaintiffs to prove the merits of any claim to establish sufficient harm for standing. *See Tanner-Brown v. Haaland*, 105 F.4th 437, 444 (D.C. Cir. 2024) (quoting *City of Waukesha v. E.P.A.*, 320 F.3d 228, 235 (D.C. Cir. 2003) (per curiam)); *Comm. on Judiciary of U.S. House of Representatives v. McGahn*, 968 F.3d 755, 762 (D.C. Cir. 2020) (en banc) ("When determining whether a plaintiff has Article III standing, the court must assume that the Committee will prevail on the merits.").[2] In addition, *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) and *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014), which the court cites in its analysis of standing for pre-enforcement challenges, Mem. Order at 16-17, involve First Amendment claims predicated on threatened prosecution. Plaintiffs in those cases had to show a constitutional injury because they were bringing constitutional claims. Here, by contrast, Plaintiffs are neither bringing constitutional causes of action nor seeking an injunction under the Fifth Amendment against prosecutions; they bring their claims against the registration regulation under the APA. Compl.

---

[2] Because standing analysis requires an assumption that Plaintiffs will prevail on the merits, the conclusion that their injury is a "mere requirement to abide by the law," Mem. Order at 15, is likewise an improper conflation of the merits and standing.

(ECF No. 1) ¶¶ 103-09. *See, e.g., CIC Servs., LLC v. Internal Revenue Serv.*, 593 U.S. 209, 213-14, 222 (2021) (confirming availability of notice-and-comment claim against tax reporting rule, noting that "the criminal penalties here practically necessitate a pre-enforcement . . . suit").

The Form G-325R does not provide any obvious mechanism to assert a Fifth Amendment privilege—it requires a yes or no answer to the questions regarding uncharged conduct, *see* Form G-325R at 7. Submission of the form alone provides a link in the chain for a § 1325 prosecution, because the vast majority of noncitizens who enter the country after being inspected will not be registered through this form. *Cf.* IFR, 90 Fed. Reg. at 11797 (noting that most of the IFR's affected population "entered … without inspection"). Those who fail to submit the form are subject to prosecution—again, something Defendants have promised to do. Mem. Supp. Stay or Prelim. Inj. at 8. There is no doubt that the IFR process, which *requires* disclosure of uncharged criminal conduct and is targeted almost exclusively at noncitizens who entered the United States in violation of 8 U.S.C. § 1325, *arguably* burdens the right against self-incrimination. *See id.* at 16-27; Mem. Reply at 13.

Similarly, Plaintiffs' members have shown that the IFR arguably burdens their First Amendment protected speech by requiring them to report on their protected advocacy "activities," *see* Form G-325R at 6, exposing them to imminent retaliatory enforcement (given Defendants' express promises to use registration as a tool for enforcement) *for their speech*. *See* Mem. Supp. Stay or Prelim. Injunct. at 32-33; *see also* Karina Tsui, *What We Know about the Federal Detention of Activists, Students and Scholars Connected to Universities*, CNN (Apr. 2, 2025, 8:48 PM), https://tinyurl.com/y7z8dysv; David Morgan, *Republican US Senator Murkowski on Threat of Trump Retaliation: 'We Are All Afraid'*, Reuters (Apr. 17, 2025, 11:06 PM), https://tinyurl.com/2v4hu4hn; Melissa Quinn, *Trump's Crusade Against Big Law Firms*

9

*Sparks Fears of Long-Lasting Damage*, CBS News (Apr. 2, 2025, 3:20 PM), https://tinyurl.com/5c766bej.

Again here, Plaintiffs do not bring independent First Amendment claims or need to prove the merits of a First Amendment claim to have standing to challenge the IFR. Plaintiffs are not invoking federal court jurisdiction premised on a First Amendment chilling of speech claim, although such harms do flow from the IFR. Instead, they are pursuing claims under the APA's notice-and-comment and reasoned decisionmaking standards. As for standing, they invoke federal court jurisdiction as parties directly regulated by the IFR—which is bolstered in part by the *injury* they suffer by being forced to expose themselves to an objective threat of retaliatory action. Therefore, *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972), in which the Supreme Court held that plaintiffs lacked standing because they had only alleged a subjective chilling of speech based on an Army data gathering system but no "present objective harm" or "threat of specific future harm," and *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984), involving a claim of chilling based on an executive order that "issues no commands or prohibitions to [the] plaintiffs, and sets forth no standards governing their conduct" are inapposite.

Even if they were not directly regulated, Plaintiffs would meet the standard for a standalone First Amendment harm. Plaintiffs agree that the standard is not subjective fear but instead whether the government action would cause a person of "ordinary firmness" to feel a chilling effect. *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021) ("In First Amendment cases, the injury-in-fact element is commonly satisfied by a sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression."), *see also id.* ("[W]hile plaintiffs need not show that the government action led them to stop speaking

altogether, they must show that the action would be likely to deter a person of ordinary firmness from the exercise of First Amendment rights." (internal quotation marks omitted)); *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 381 (D.D.C. 2020) ("Government action rises to the level of chilling speech when it is likely to deter a person of ordinary firmness from the exercise of First Amendment rights" (internal quotation marks omitted)). Here, against the backdrop of extraordinary recent enforcement directly tied to speech activities, a person of "ordinary firmness" would experience chilling of speech by having to disclose to the government First Amendment protected activity on a form whose stated purpose is to aid in deportation efforts.

      Finally, Plaintiffs' concerns about prosecution for failure to register have been borne out in the brief period since the Court denied the motion for stay or preliminary injunction. *See* Ex. B (collecting six criminal complaints from the District of Arizona and the Eastern District of Louisiana filed since April 17, 2025 for failure to register under 8 U.S.C. §1306(a)); Ex. O (Cisneros Decl.) (federal public defender describing two cases assigned to her under 8 U.S.C. § 1306 (a)). This sample of federal charges filed in just one week illustrates what promises to be a larger national trend, as Defendants have made clear their intent to prioritize prosecutions for failure to register and to carry registration documents. *See* Mem. Supp. Mot. Stay or Prelim. Inj. at 8, 16. This harm is concrete and nonspeculative.

      Because Plaintiffs' members have established standing on multiple grounds, because the interests that Plaintiffs seek to protect are germane to their missions, and because individual members need not participate in this lawsuit, Plaintiffs have shown standing sufficient to support an injunction of the IFR pending appeal. *See Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977); *see also* Mem. Reply at 2-5.

### C. Plaintiff CHIRLA Has Established Organizational Standing

CHIRLA—the only plaintiff claiming organizational standing in this case—has shown much more than a frustration of purpose. CHIRLA's injuries here relate to its core programmatic work of providing legal services. To have organizational standing, a plaintiff must first face a "concrete and demonstrable injury to [its] activities[,] more than "simply a setback to [its] abstract social interests." *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 618 (D.C. Cir. 2020) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). And the organization must divert "resources to counteract that" injury. *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015) ("*PETA*"). CHIRLA satisfies both prongs.

In denying the motion for a stay or preliminary injunction, the court focused on cases that denied standing to organizations whose focus was advocacy and public education efforts. Mem. Order at 7-10. For example, the plaintiff organization in *Food & Water Watch, Inc. v Vilsack* had alleged "nothing more than an abstract injury to its interests" in educating the public about food systems and advocacy against a poultry inspection system. 808 F.3d 905, 920-21 (D.C. Cir. 2015). Similarly, *Food & Drug Admin. v. Alliance for Hippocratic Medicine* reiterated the longstanding principle that an organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. 602 U.S. 367, 394 (2024). And the plaintiff organization in *National Taxpayers Union, Inc. v. United States* that claimed injury to its educational and legislative initiatives presented "no evidence" the action it challenged subjected it to increased operational costs. 68 F.3d 1428, 1434 (D.C. Cir. 1995).

In contrast, CHIRLA has presented evidence of direct harms clearly distinguishable from *Food & Water Watch*, *Alliance for Hippocratic Medicine*, and *National Taxpayers Union*. CHIRLA has identified the following concrete harms to its core programmatic work: 1) at least 100 current clients it has already identified who appear required to register under the IFR, including 60 U visa applicants (those applying for immigration relief as victims of certain serious crimes), Salas Decl. (ECF No. 4-2) ¶ 18; 2) the need for legal staff to spend additional time and divert resources from current legal representation to review client files to determine the need to register, which will require filing a FOIA request for some cases, and the need to engage in separate consultations with clients about registering, *id.* ¶¶ 18, 20; 3) an increase in the volume of inquiries about registration through its hotline, evidenced in part by numerous calls inquiring about registration in anticipation of the IFR taking effect, *id.* ¶¶ 16-17; 4) a strain on its personnel and financial resources as a result of this increased volume of work arising from the IFR, *id.* ¶¶ 17-21; and 5) interference with existing grant deliverables that fund legal services for immigration benefits and removal proceedings on a per case basis, *id.* ¶ 19. Underscoring that such harm is not speculative, CHIRLA has already identified 100 *current* clients who will need its assistance with registration, *id.* ¶ 18, and the government's own numbers in the IFR indicate that it will impact 2-3 million people, IFR 90 Fed. Reg. at 11797. District courts in this circuit have held that similar injuries are sufficiently concrete and nonspeculative. *See Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.*, 513 F. Supp. 3d 154, 169-71 (D.D.C. 2021); *Nw. Immigr. Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 46-50 (D.D.C. 2020).

These types of harms are much more analogous to those at issue in *PETA*. There, the animal rights organization challenged USDA's refusal to apply the Animal Welfare Act to birds,

13

which PETA alleged impeded its mission of preventing cruelty to animals and caused it to divert resources to respond to complaints about mistreatment of birds and to file complaints with agencies other than USDA. *PETA*, 797 F.3d at 1095-97. Notably, "an organization need not be 'entirely hamstrung' by an action to have standing to challenge it." *AFL-CIO v. Dep't of Lab.*, --- F. Supp. 3d ---,No. CV 25-339 (JDB), 2025 WL 1129227, at *11 (D.D.C. Apr. 16, 2025) (quoting *Cap. Area Immigrants' Rts. Coal. v. Trump*, 471 F. Supp. 3d 25, 40 (D.D.C. 2020)). Instead, "[i]ts activities need only be 'perceptibly impaired.'" *Id.* (quoting *PETA*, 797 F.3d at 1093). The conclusion that the IFR has not "perceptibly impaired" CHIRLA's mission rests on an improperly narrow construction of *PETA*'s analysis of harm. *See* Mem. Order at 10 (noting that there is "no claim that the Government is blocking CHIRLA from carrying out its mission"). CHIRLA's evidence shows more than a need to increase resources on educating the general public and its members about a general government regulation. *Contra* Mem. Order at 11 (citing *Nat'l Taxpayers' Union*, 68 F.3d at 1434). The finding that CHIRLA is "merely expand[ing] its operations to address increased demands in the communities it serves," Mem. Order at 11, and that accordingly, "its activities have not been tampered with," *id.*, is at odds with CHIRLA's evidence that the IFR is already straining and threatens to further strain its resources and deliverables.

Finally, it is not the case that because CHIRLA describes its mission as ensuring the integration of immigrant communities into our society "with full rights and access to resources," Salas Decl. ¶ 3, the IFR in some ways furthers its mission. As an initial matter, it is the government action, not the organization's response to it, that is to be judged against the mission. *PETA*, 797 F.3d at 1095 (citing *Am. Soc. for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 26 (D.C. Cir. 2011)). Plainly, a regulation that puts millions of noncitizens in the

14

crosshairs for immigration enforcement under pain of criminal prosecution does not further the mission of immigrant integration. Moreover, CHIRLA is unlike the plaintiff organization in *Elec. Priv. Info. Ctr. v. U.S. Dep't of Education* ("*EPIC*")—which was a purely issue advocacy organization that did not provide direct services and claimed harm from lobbying related expenditures in response to a final rule. 48 F. Supp. 3d 1, 23–24 (D.D.C. 2014). The court in *EPIC* found that the group's expenditures "to promote its legislative agenda through research, education, outreach to the public and the media, submission of administrative comments, and litigation is a normal and critical part of its mission and operations." *Id.* CHIRLA's harm is fundamentally distinct from that in *EPIC* and similar cases cited by the Court. *See* Mem. Order at 12 (citing *Env't Working Grp. v. United States Food & Drug Admin.*, 301 F. Supp. 3d 165, 173 (D.D.C. 2018) (lobbying, education, advocacy); *Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. United States Dep't of Agric.*, 573 F. Supp. 3d 324, 342-344 (D.D.C. 2021) (educating members and the public)).

      That CHIRLA is the first point of contact for many community members seeking information about immigration policy changes does not undercut the harm it faces by having to significantly increase staff time and resources to respond to the increased call volume to its hotline and to provide additional expanded legal services to comply with a new regulatory regime within its existing funding framework. *See* Salas Decl. ¶¶ 16-21. CHIRLA is not merely educating the public and its members about policy changes, it is being forced to shift its resources to respond to the IFR that will directly and adversely impact its existing clients and members.

## II.     PLAINTIFFS' HARM IS IRREPARABLE.

Plaintiffs' harm described above is irreparable. As Plaintiffs outlined in their prior submissions, members of Plaintiff organizations who are directly regulated by the IFR do not speak English and have difficulty accessing the Internet, putting them at imminent risk of prosecution and detention for failure to register. *See* Mem. in Supp. of Mot. for Stay or Inj. at 29-33; Ex. C (Decl. of UFW Member "Ana") ¶¶ 5, 8; Ex. D (Decl. of UFW Member "Gloria") ¶¶ 7, 9. For individuals like CHILRA member Ursela and MRNY member Guvelia, who have pending immigration applications under congressionally authorized forms of relief, the IFR's registration requirement causes irreparable harm because those applications do not count as registration documents or evidence of registration, and these members now must undergo the G-325R process to register and provide far more information to the government. Ex. F (Decl. of CHIRLA Member "Ursela") ¶ 4; Ex. H (Decl. of MRNY Member "Guvelia") ¶ 9. In the case of Guvelia, who has applied for a U visa as a victim of crime and CHIRLA member Tiana, who has begun the process of self-petitioning under the Violence Against Women Act (VAWA), the G325-R process contains none of the statutory confidentiality protections that U visa and VAWA submission provide. *See* Ex. H (Decl. of MRNY Member "Guvelia") ¶ 9; Ex. G (Decl. of CHIRLA Member "Tiana") ¶ 5; 8 U.S.C. § 1367. These members thus face irreparable harm from the IFR's requirement to provide personal information that Defendants explicitly intend to use for immigration enforcement, while these individuals are awaiting Congressionally authorized forms of immigration relief.

In addition, members of Plaintiff organizations are irreparably harmed because the registration requirement including its disclosure of First Amendment protected activity would deter a person of "ordinary firmness" from exercising their First Amendment rights. *See* Exs. I

16

(Decl. of CASA Member "YL") ¶¶ 3-4; Ex. J (Decl. of CASA member "ME") ¶¶ 4-5; Ex. K (Decl. of CASA Member "JC") ¶¶ 4-6; Ex. L (Decl. of CASA member "ALDC") ¶¶ 4-5; Ex. M (Decl. of CASA Member "NC") ¶¶ 4-5; Ex. N (Decl. of CASA Member "PH") ¶¶ 3-5; Ex. E (Decl. of CHIRLA Member "Luisa") ¶¶ 4-5. The IFR's requirement that members such as Ursela admit to the crime of improper entry under 8 U.S.C. § 1325 is also an irreparable harm. Federal prosecutions for failure to register under 8 U.S.C. § 1304 have begun, underscoring the irreparable nature of that harm. *See* Ex. O (Cisneros Decl.); Ex. B (Criminal Complaints). Finally, harm to CHIRLA as an organization is irreparable because the IFR is already impacting its core programmatic work in a manner that, among other injuries, threatens its current grant deliverables. *See Cath. Legal Immigr. Network*, 513 F. Supp. 3d at 176; *Nw. Immigrant Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 80 (D.D.C. 2020).

### III.   THE PUBLIC INTEREST AND THE BALANCE OF THE EQUITIES TIP IN PLAINTIFFS' FAVOR

For the reasons outlined in Plaintiffs' motion for a stay of effective date or preliminary injunction, the balance of equities tips in Plaintiffs' favor and the public interest favors an injunction. *See* ECF No. 4-1 at 41-42. Until two weeks ago, the government had not enforced a universal registration requirement and attendant criminal penalties since the mid-20th century. Given that longstanding state of affairs, the balance of equities favors "a preliminary injunction that serves only to preserve the relative positions of the parties until a trial on the merits can be held." *Texas Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 245 (D.D.C. 2014) (internal quotation marks omitted). *See* Mem. Supp. Stay or Prelim. Inj. at 34-35.

### CONCLUSION

Plaintiffs respectfully request that the Court enter an injunction pending appeal.

Dated: April 24, 2025                                         Respectfully submitted,


                                                              /s/ Michelle Lapointe

Lynn Damiano Pearson*                                         Michelle Lapointe (DC Bar No. 90032063)*
Cassandra Charles*                                                (admission pending)
Joanna Cuevas Ingram*                                         Emma Winger (DC Bar No. 90010721)
National Immigration Law Center                               Leslie K. Dellon (DC Bar No. 250316)
P.O. Box 34573                                                Chris Opila (DC Bar No. 90029724)
Washington, D.C. 20043                                        American Immigration Council
Tel: (213) 639-3900                                           PMB2026
Fax: (213) 639-3911                                           2001 L Street, NW, Suite 500
damianopearson@nilc.org                                       Washington, DC 20036
charles@nilc.org                                              Tel: (202) 507-7645
cuevasingram@nilc.org                                         ewinger@immcouncil.org
                                                              mlapointe@immcouncil.org
                                                              ldellon@immcouncil.org
                                                              copila@immcouncil.org

Jennifer R. Coberly (DDC Bar No. 90031302)                    Cody Wofsy (DDC Bar No. CA00103)
American Immigration Lawyers Association                      American Civil Liberties Union Foundation,
1331 G. St. NW                                                Immigrants' Rights Project
Washington, DC 20005                                          425 California St, 7th Floor
Tel: (202) 507-7692                                           San Francisco, CA 94104
Jcoberly@AILA.org                                             Tel: (415) 343-0770
                                                              cwofsy@aclu.org

Nicholas Katz**                                               Anthony Enriquez* (NY Bar No. 5211404)
CASA, Inc.                                                    Sarah T. Gillman (DDC Bar No. NY0316)
8151 15th Avenue                                              Robert F. Kennedy Human Rights
Hyattsville, MD 20783                                         88 Pine Street, Suite 801
Tel: (240) 491-5743                                           New York, NY 10005
nkatz@wearecasa.org                                           (917) 284-6355
                                                              enriquez@rfkhumanrights.org
                                                              gillman@rfkhumanrights.org

                                                              Sarah E. Decker (DDC Bar No. NY0566)
                                                              Robert F. Kennedy Human Rights
                                                              1300 19th Street NW, Suite 750
                                                              Washington, DC 20036
                                                              (202) 559-4432
                                                              decker@rfkhumanights.org

*\* Admitted Pro Hac Vice*
*\*\* Pro Hac Vice application forthcoming*