APPEAL,TYPE–D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:25–cv–00943–TNM</u>
### *Internal Use Only*

COALITION FOR HUMANE IMMIGRANT RIGHTS et al v.
U.S. DEPARTMENT OF HOMELAND SECURITY et al
Assigned to: Judge Trevor N. McFadden
Cause: 05:551 Administrative Procedure Act

Date Filed: 03/31/2025
Jury Demand: None
Nature of Suit: 899 Administrative
Procedure Act/Review or Appeal of
Agency Decision
Jurisdiction: U.S. Government Defendant

**<u>Plaintiff</u>**

**COALITION FOR HUMANE
IMMIGRANT RIGHTS**

represented by **Cassandra Charles**
147–11 240th Street
Rosedale, NY 11422
516–603–1986
Email: charles@nilc.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joanna Cuevas Ingram**
NATIONAL IMMIGRATION LAW
CENTER
P.O. Box 34573
Washington, DC 20043
213–377–5258
Fax: 213–639–3911
Email: cuevasingram@nilc.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lynn Damiano Pearson**
NATIONAL IMMIGRATION LAW
CENTER
P.O. Box 34573
Washington, DC 20043
213–639–3900
Fax: 213–639–3911
Email: damianopearson@nilc.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Chris Opila**
AMERICAN IMMIGRATION COUNCIL
Pmb2026

1

2001 L Street N.W.,
Suite 500
Washington, DC 20036
202–507–7699
Email: copila@immcouncil.org
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street
Suite 7th Floor
San Francisco, CA 94104
415–343–0785
Email: cwofsy@aclu.org
*ATTORNEY TO BE NOTICED*

**Jennifer Coberly**
AMERICAN IMMIGRATION
LAWYERS ASSOCIATION
1331 G Street
Suite 300
20005
Washington, DC 20005
202–507–7692
Email: jcoberly@aila.org
*ATTORNEY TO BE NOTICED*

**Leslie Karen Dellon**
AMERICAN IMMIGRATION COUNCIL
Pmb2026
2001 L Street N.W.
Suite 500
Washington, DC 20036
(202) 507–7530
Fax: (202) 742–5619
Email: ldellon@immcouncil.org
*ATTORNEY TO BE NOTICED*

**Michelle Lapointe**
AMERICAN IMMIGRATION COUNCIL
Pmb2026
2001 L Street N.W.
Suite 500
Washington, DC 20036
202–507–7645
Email: mlapointe@immcouncil.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Decker**
ROBERT F. KENNEDY HUMAN

RIGHTS
Washington
1300 19th Street NW
Suite #750
20036
Washington, DC 20036
908–967–3245
Email: decker@rfkhumanrights.org
*ATTORNEY TO BE NOTICED*

**Sarah Telo Gillman**
ROBERT F. KENNEDY HUMAN
RIGHTS (RFK HUMAN RIGHTS)
88 Pine Street
Suite 801
New York, NY 10005
646–289–5593
Email: gillman@rfkhumanrights.org
*ATTORNEY TO BE NOTICED*

**Emma Curtis Winger**
AMERICAN IMMIGRATION COUNCIL
Pmb2026
2001 L Street N.W.
Suite 500
Washington, DC 20036
202–507–7512
Email: ewinger@immcouncil.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **UNITED FARM WORKERS OF AMERICA** | represented by | **Cassandra Charles**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Joanna Cuevas Ingram**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lynn Damiano Pearson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Chris Opila**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Coberly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leslie Karen Dellon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle Lapointe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Decker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Telo Gillman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emma Curtis Winger**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**CASA, INC.**                    represented by    **Cassandra Charles**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joanna Cuevas Ingram**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lynn Damiano Pearson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Chris Opila**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Coberly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leslie Karen Dellon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle Lapointe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Decker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Telo Gillman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emma Curtis Winger**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**MAKE THE ROAD NEW YORK**          represented by   **Cassandra Charles**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joanna Cuevas Ingram**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lynn Damiano Pearson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Chris Opila**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Coberly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leslie Karen Dellon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle Lapointe**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Decker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Telo Gillman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emma Curtis Winger**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**U.S. DEPARTMENT OF**                    represented by    **Kartik Narayan Venguswamy**
**HOMELAND SECURITY**                                      DOJ–USAO
                                                           601 D Street NW
                                                           Washington, DC 20579
                                                           (202) 252–1790
                                                           Email: kartik.venguswamy@usdoj.gov
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Ernesto Horacio Molina , Jr.**
                                                           U.S. DEPARTMENT OF JUSTICE
                                                           PO BOX 878
                                                           Ben Franklin Station
                                                           Washington, DC 20044
                                                           (202) 616–9344
                                                           Email: ernesto.h.molina@usdoj.gov
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**KRISTI NOEM**
*in her official capacity as Secretary of the Department of Homeland Security*

represented by **Kartik Narayan Venguswamy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. CITIZENSHIP AND IMMIGRATION SERVICES**

represented by **Kartik Narayan Venguswamy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**KIKA SCOTT**
*in her official capacity as Senior Official Performing the Duties of the Director,*

represented by **Kartik Narayan Venguswamy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**

represented by **Kartik Narayan Venguswamy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TODD M. LYONS**
*in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement*

represented by **Kartik Narayan Venguswamy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. CUSTOMS AND BORDER PROTECTION**

represented by **Kartik Narayan Venguswamy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**PETE R. FLORES**
*in his official capacity as Acting Commissioner, U.S. Customs and Border Protection*

represented by **Kartik Narayan Venguswamy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF JUSTICE**

represented by **Kartik Narayan Venguswamy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**PAMELA J. BONDI**
*in her official capacity as Attorney General*

represented by **Kartik Narayan Venguswamy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/31/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number ADCDC–11578932) filed by CASA, INC., UNITED FARM WORKERS OF AMERICA, COALITION FOR HUMANE IMMIGRANT RIGHTS, MAKE THE ROAD NEW YORK. (Attachments: # 1 Civil Cover Sheet, # 2 Summons DHS, # 3 Summons Secretary of DHS, # 4 Summons USCIS, # 5 Summons Director of USCIS, # 6 Summons ICE, # 7 Summons Director of ICE, # 8 Summons CBP, # 9 Summons Commissioner of CBP, # 10 Summons DOJ, # 11 Summons Attorney General, # 12 |

| | | Summons USAO)(Winger, Emma) (Entered: 03/31/2025) |
|---|---|---|
| 03/31/2025 | 2 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by COALITION FOR HUMANE IMMIGRANT RIGHTS, UNITED FARM WORKERS OF AMERICA, CASA, INC., MAKE THE ROAD NEW YORK (Winger, Emma) (Entered: 03/31/2025) |
| 03/31/2025 | 3 | NOTICE of Appearance by Emma Curtis Winger on behalf of All Plaintiffs (Winger, Emma) (Entered: 03/31/2025) |
| 03/31/2025 | 4 | MOTION to Stay *Effective Date*, MOTION for Preliminary Injunction , MOTION to Expedite *Consideration* by COALITION FOR HUMANE IMMIGRANT RIGHTS, UNITED FARM WORKERS OF AMERICA, CASA, INC., MAKE THE ROAD NEW YORK. (Attachments: # 1 Memorandum in Support, # 2 Declaration Angelica Salas, # 3 Declaration Elizabeth Strater, # 4 Declaration George Escobar, # 5 Declaration Sienna Fontaine, # 6 Text of Proposed Order)(Winger, Emma) (Entered: 03/31/2025) |
| 04/01/2025 | | Case Assigned to Judge Trevor N. McFadden. (znmw) (Entered: 04/01/2025) |
| 04/01/2025 | 5 | SUMMONS (11) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(znmw) (Entered: 04/01/2025) |
| 04/01/2025 | 6 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jennifer Rae Coberly, Filing fee $ 100, receipt number ADCDC–11581163. Fee Status: Fee Paid. by COALITION FOR HUMANE IMMIGRANT RIGHTS, UNITED FARM WORKERS OF AMERICA, CASA, INC., MAKE THE ROAD NEW YORK. (Attachments: # 1 Exhibit Coberly Declaration, # 2 Good Standing Cert., # 3 Text of Proposed Order Proposed Order)(Dellon, Leslie) (Entered: 04/01/2025) |
| 04/01/2025 | 7 | NOTICE of Appearance by Chris Opila on behalf of All Plaintiffs (Opila, Chris) (Entered: 04/01/2025) |
| 04/01/2025 | 8 | NOTICE of Appearance by Cody H. Wofsy on behalf of All Plaintiffs (Wofsy, Cody) (Main Document 8 replaced on 4/3/2025) (mg). (Entered: 04/01/2025) |
| 04/01/2025 | 9 | NOTICE of Appearance by Ernesto Horacio Molina, Jr on behalf of All Defendants (Molina, Ernesto) (Entered: 04/01/2025) |
| 04/01/2025 | | MINUTE ORDER: It is ORDERED that a telephonic scheduling conference shall be held today, April 1, 2025, at 4:30 p.m.. Dial–in information has been provided to the parties. SO ORDERED. Signed by Judge Trevor N. McFadden on 4/1/2025. (lctnm3). (Entered: 04/01/2025) |
| 04/01/2025 | | Minute Entry for proceedings held before Judge Trevor N. McFadden: Telephonic Scheduling Conference held on 4/1/2025. Defendant's Opposition due by noon on 4/4/2025. Plaintiff's Reply due by noon on 4/7/2025. Motion Hearing set for 4/8/2025 at 10:00 AM in Courtroom 2 before Judge Trevor N. McFadden. (Court Reporter: Lisa Edwards.) (hmc) (Entered: 04/01/2025) |
| 04/02/2025 | 10 | NOTICE of Appearance– Pro Bono by Sarah Telo Gillman on behalf of All Plaintiffs (Gillman, Sarah) (Entered: 04/02/2025) |
| 04/02/2025 | 11 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Michelle Lapointe, Filing fee $ 100, receipt number ADCDC–11586002. Fee Status: Fee Paid. by COALITION FOR HUMANE IMMIGRANT RIGHTS, UNITED FARM WORKERS |

| | | |
|---|---|---|
| | | OF AMERICA, CASA, INC., MAKE THE ROAD NEW YORK. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Opila, Chris) (Entered: 04/02/2025) |
| 04/03/2025 | 12 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Anthony Enriquez, Fee Status: No Fee Paid. by COALITION FOR HUMANE IMMIGRANT RIGHTS, UNITED FARM WORKERS OF AMERICA, CASA, INC., MAKE THE ROAD NEW YORK. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Gillman, Sarah) (Entered: 04/03/2025) |
| 04/04/2025 | 13 | MOTION for Order *To Provide Remote Public Telephonic Access to Courtroom for April 8, 2025 Hearing* by COALITION FOR HUMANE IMMIGRANT RIGHTS, UNITED FARM WORKERS OF AMERICA, CASA, INC., MAKE THE ROAD NEW YORK. (Attachments: # 1 Text of Proposed Order Proposed Order)(Dellon, Leslie) (Entered: 04/04/2025) |
| 04/04/2025 | | MINUTE ORDER: The 12 Motion for Leave to Appear Pro Hac Vice is GRANTED. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Trevor N. McFadden on 4/4/2025. (lctnm3). (Entered: 04/04/2025) |
| 04/04/2025 | | MINUTE ORDER granting 11 Motion for Leave to Appear Pro Hac Vice. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Trevor N. McFadden on 4/4/2025. (lctnm3). (Entered: 04/04/2025) |
| 04/04/2025 | | MINUTE ORDER granting 6 Motion for Leave to Appear Pro Hac Vice. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Trevor N. McFadden on 4/4/2025. (lctnm3). (Entered: 04/04/2025) |
| 04/04/2025 | 14 | NOTICE of Appearance by Michelle Lapointe on behalf of All Plaintiffs (Lapointe, Michelle) (Entered: 04/04/2025) |
| 04/04/2025 | 15 | Memorandum in opposition to re 4 Motion to Stay,, Motion for Preliminary Injunction,, Motion to Expedite, filed by TODD M. LYONS, U.S. CUSTOMS AND BORDER PROTECTION, PETE R. FLORES, U.S. DEPARTMENT OF JUSTICE, PAMELA J. BONDI, U.S. DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, KIKA SCOTT, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT. (Venguswamy, Kartik) (Entered: 04/04/2025) |
| 04/04/2025 | 16 | NOTICE of Appearance by Kartik Narayan Venguswamy on behalf of All Defendants (Venguswamy, Kartik) (Entered: 04/04/2025) |
| 04/04/2025 | 17 | NOTICE of Appearance by Jennifer Coberly on behalf of All Plaintiffs (Coberly, Jennifer) (Entered: 04/04/2025) |
| 04/04/2025 | 18 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Joanna Elise Cuevas Ingram, Filing fee $ 100, receipt number ADCDC–11592935. Fee Status: Fee Paid. by COALITION FOR HUMANE IMMIGRANT RIGHTS, UNITED FARM WORKERS OF AMERICA, CASA, INC., MAKE THE ROAD NEW YORK. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Opila, Chris) (Entered: 04/04/2025) |
| 04/04/2025 | 19 | |

| | | |
|---|---|---|
| | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Lynn Damiano Pearson, Filing fee $ 100, receipt number ADCDC–11593021. Fee Status: Fee Paid. by COALITION FOR HUMANE IMMIGRANT RIGHTS, UNITED FARM WORKERS OF AMERICA, CASA, INC., MAKE THE ROAD NEW YORK. (Attachments: # 1 Declaration, # 2 Exhibit Letter of Good Standing, # 3 Text of Proposed Order)(Opila, Chris) (Entered: 04/04/2025) |
| 04/05/2025 | | MINUTE ORDER granting 18 Motion for Leave to Appear Pro Hac Vice. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Trevor N. McFadden on 4/5/2025. (lctnm3). (Entered: 04/05/2025) |
| 04/05/2025 | | MINUTE ORDER granting 19 Motion for Leave to Appear Pro Hac Vice. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Trevor N. McFadden on 4/5/2025. (lctnm3). (Entered: 04/05/2025) |
| 04/07/2025 | 20 | REPLY to opposition to motion re 4 Motion to Stay,, Motion for Preliminary Injunction,, Motion to Expedite, filed by CASA, INC., COALITION FOR HUMANE IMMIGRANT RIGHTS, MAKE THE ROAD NEW YORK, UNITED FARM WORKERS OF AMERICA. (Lapointe, Michelle) (Entered: 04/07/2025) |
| 04/07/2025 | 21 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Cassandra Charles, Filing fee $ 100, receipt number ADCDC–11596063. Fee Status: Fee Paid. by CASA, INC., COALITION FOR HUMANE IMMIGRANT RIGHTS, MAKE THE ROAD NEW YORK, UNITED FARM WORKERS OF AMERICA. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Opila, Chris) (Entered: 04/07/2025) |
| 04/07/2025 | | MINUTE ORDER: The 13 Motion for Order for Remote Access is DENIED. SO ORDERED. Signed by Judge Trevor N. McFadden on 4/7/2025. (lctnm3). (Entered: 04/07/2025) |
| 04/07/2025 | | MINUTE ORDER granting 21 Motion for Leave to Appear Pro Hac Vice. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Trevor N. McFadden on 4/7/2025. (lctnm3). (Entered: 04/07/2025) |
| 04/07/2025 | 22 | NOTICE of Appearance by Sarah Decker on behalf of All Plaintiffs (Decker, Sarah) (Main Document 22 replaced on 4/8/2025) (mg). (Entered: 04/07/2025) |
| 04/08/2025 | | Minute Entry for proceedings held before Judge Trevor N. McFadden: Motion Hearing held on 4/8/2025 re 4 MOTION to Stay *Effective Date,* MOTION for Preliminary Injunction, MOTION to Expedite *Consideration* filed by CASA, INC., UNITED FARM WORKERS OF AMERICA, COALITION FOR HUMANE IMMIGRANT RIGHTS, MAKE THE ROAD NEW YORK. Matter held under advisement. (Court Reporter: Lisa Edwards.) (hmc) (Entered: 04/08/2025) |
| 04/08/2025 | 23 | NOTICE of Appearance by Joanna Cuevas Ingram on behalf of All Plaintiffs (Cuevas Ingram, Joanna) (Entered: 04/08/2025) |
| 04/08/2025 | 24 | NOTICE of Appearance by Cassandra Charles on behalf of All Plaintiffs (Charles, Cassandra) (Entered: 04/08/2025) |
| 04/08/2025 | 25 | NOTICE of Appearance by Lynn Damiano Pearson on behalf of All Plaintiffs (Damiano Pearson, Lynn) (Entered: 04/08/2025) |

| 04/08/2025 | 26 | NOTICE OF SUPPLEMENTAL AUTHORITY by CASA, INC., COALITION FOR HUMANE IMMIGRANT RIGHTS, MAKE THE ROAD NEW YORK, UNITED FARM WORKERS OF AMERICA (Winger, Emma) (Entered: 04/08/2025) |
| --- | --- | --- |
| 04/10/2025 | 27 | MEMORANDUM ORDER denying Plaintiffs' 4 Motion to Stay Effective Date or Motion for Preliminary Injunction in the Alternative. See attached Order for details. Signed by Judge Trevor N. McFadden on 4/10/2025. (lctnm3). (Entered: 04/10/2025) |
| 04/15/2025 | 28 | TRANSCRIPT OF MOTION HEARING before Judge Trevor N. McFadden held on April 8, 2025; Page Numbers: 1–45. Date of Issuance:April 15, 2025. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354–3269. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/6/2025. Redacted Transcript Deadline set for 5/16/2025. Release of Transcript Restriction set for 7/14/2025.(Edwards, Lisa) (Entered: 04/15/2025) |
| 04/23/2025 | 29 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 4/1/2025. Answer due for ALL FEDERAL DEFENDANTS by 5/31/2025. (Attachments: # 1 Exhibit Proof of Service)(Dellon, Leslie) (Entered: 04/23/2025) |
| 04/23/2025 | 30 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 4/8/2025. (Attachments: # 1 Exhibit Proof of Service)(Dellon, Leslie) (Entered: 04/23/2025) |
| 04/23/2025 | 31 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. PAMELA J. BONDI served on 4/8/2025 (Attachments: # 1 Exhibit Proof of Service)(Dellon, Leslie) (Entered: 04/23/2025) |
| 04/23/2025 | 32 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF HOMELAND SECURITY served on 4/11/2025 (Attachments: # 1 Exhibit Proof of Service)(Dellon, Leslie) (Entered: 04/23/2025) |
| 04/23/2025 | 33 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. KRISTI NOEM served on 4/9/2025 (Attachments: # 1 Exhibit Proof of Service)(Dellon, Leslie) (Entered: 04/23/2025) |
| 04/23/2025 | 34 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF JUSTICE served on 4/8/2025 (Attachments: # 1 Exhibit Proof of Service)(Dellon, Leslie) (Entered: 04/23/2025) |

| 04/23/2025 | 35 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. TODD M. LYONS served on 4/7/2025 (Attachments: # 1 Exhibit Proof of Service)(Dellon, Leslie) (Entered: 04/23/2025) |
|---|---|---|
| 04/23/2025 | 36 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT served on 4/10/2025 (Attachments: # 1 Exhibit Proof of Service)(Dellon, Leslie) (Entered: 04/23/2025) |
| 04/23/2025 | 37 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. PETE R. FLORES served on 4/7/2025 (Attachments: # 1 Exhibit Proof of Service)(Dellon, Leslie) (Entered: 04/23/2025) |
| 04/23/2025 | 38 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. CUSTOMS AND BORDER PROTECTION served on 4/7/2025 (Attachments: # 1 Exhibit Proof of Service)(Dellon, Leslie) (Entered: 04/23/2025) |
| 04/23/2025 | 39 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. CITIZENSHIP AND IMMIGRATION SERVICES served on 4/10/2025 (Attachments: # 1 Exhibit Proof of Service)(Dellon, Leslie) (Entered: 04/23/2025) |
| 04/23/2025 | 40 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. KIKA SCOTT served on 4/7/2025 (Attachments: # 1 Exhibit Proof of Service)(Dellon, Leslie) (Entered: 04/23/2025) |
| 04/24/2025 | 41 | NOTICE OF APPEAL TO DC CIRCUIT COURT by CASA, INC., COALITION FOR HUMANE IMMIGRANT RIGHTS, MAKE THE ROAD NEW YORK, UNITED FARM WORKERS OF AMERICA. Filing fee $ 605, receipt number ADCDC–11643221. Fee Status: Fee Paid. Parties have been notified. (Lapointe, Michelle) (Entered: 04/24/2025) |
| 04/24/2025 | 42 | MOTION for Injunction *Pending Appeal* by CASA, INC., COALITION FOR HUMANE IMMIGRANT RIGHTS, MAKE THE ROAD NEW YORK, UNITED FARM WORKERS OF AMERICA. (Attachments: # 1 Exhibit A – Hearing Transcript, # 2 Exhibit B – Criminal Complaints Under 8 U.S.C. § 1306(a), # 3 Declaration Ex. C – Declaration of UFW Member Ana, # 4 Declaration Ex. D – Declaration of UFW Member Gloria, # 5 Declaration Ex. E – Declaration of CHIRLA Member Luisa, # 6 Declaration Ex. F – Declaration of CHIRLA Member Ursela, # 7 Declaration Ex. G – Declaration of CHIRLA Member Tiana, # 8 Declaration Ex. H – Declaration of MRNY Member Guvelia, # 9 Declaration Ex. I –Declaration of CASA Member YL, # 10 Declaration Ex. J – Declaration of CASA Member ME, # 11 Declaration Ex. K – Declaration of CASA Member JC, # 12 Declaration Ex. L – Declaration of CASA Member ALDC, # 13 Declaration Ex. M – Declaration of CASA Member NC, # 14 Declaration Ex. N – Declaration of CASA Member PH, # 15 Declaration Ex. O – Declaration of Milagros Cisneros, # 16 Text of Proposed Order)(Lapointe, Michelle) (Entered: 04/24/2025) |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.,* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-00943-TNM |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.,* | ) ) ) | |
| Defendants. | ) ) | |

**NOTICE OF APPEAL FROM DENIAL OF PRELIMINARY INJUNCTION**

PLEASE TAKE NOTICE that Plaintiffs Coalition for Humane Immigrant Rights, United Farmworkers of America, CASA, Inc., and Make the Road New York hereby appeal to the U.S. Court of Appeals for the District of Columbia Circuit from this Court's April 10, 2025, Memorandum Order (ECF No. 27) denying Plaintiffs' motion for preliminary injunction.

Dated: April 24, 2025

Respectfully submitted,

Lynn Damiano Pearson*
Cassandra Charles*
Joanna Cuevas Ingram*
National Immigration Law Center
P.O. Box 34573
Washington, D.C.  20043
Tel: (213) 639-3900
Fax: (213) 639-3911
damianopearson@nilc.org
charles@nilc.org
cuevasingram@nilc.org

*/s/ Michelle Lapointe*
Michelle Lapointe (DC Bar No. 90032063)*
   (admission pending)
Emma Winger (DC Bar No. 90010721)
Leslie K. Dellon (DC Bar No. 250316)
Chris Opila (DC Bar No. 90029724)
American Immigration Council
PMB2026
2001 L Street, NW, Suite 500
Washington, DC 20036
Tel: (202) 507-7645
ewinger@immcouncil.org
mlapointe@immcouncil.org
ldellon@immcouncil.org
copila@immcouncil.org

1

Jennifer R. Coberly (DDC Bar No. 90031302)
American Immigration Lawyers Association
1331 G. St. NW
Washington, DC 20005
Tel: (202) 507-7692
Jcoberly@AILA.org

Nicholas Katz**
CASA, Inc.
8151 15th Avenue
Hyattsville, MD 20783
Tel: (240) 491-5743
nkatz@wearecasa.org

Cody Wofsy (DDC Bar No. CA00103)
American Civil Liberties Union Foundation,
Immigrants' Rights Project
425 California St, 7th Floor
San Francisco, CA 94104
Tel: (415) 343-0770
cwofsy@aclu.org

Anthony Enriquez* (NY Bar No. 5211404)
Sarah T. Gillman (DDC Bar No. NY0316)
Robert F. Kennedy Human Rights
88 Pine Street, Suite 801
New York, NY 10005
(917) 284-6355
enriquez@rfkhumanrights.org
gillman@rfkhumanrights.org

Sarah E. Decker (DDC Bar No. NY0566)
Robert F. Kennedy Human Rights
1300 19th Street NW, Suite 750
Washington, DC 20036
(202) 559-4432
decker@rfkhumanights.org

*Admitted Pro Hac Vice*
**Pro Hac Vice application forthcoming*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**COALITION FOR HUMANE**
**IMMIGRANT RIGHTS**, et al.,

        Plaintiffs,

        v.

**U.S. DEPARTMENT OF HOMELAND**
**SECURITY**, et al.,

        Defendants.

Case No. 1:25-cv-00943 (TNM)

---

## <u>MEMORANDUM ORDER</u>

Advocacy organizations serving immigrant communities bring a motion to stay the effective date of an interim final rule issued by the Department of Homeland Security. They alternatively move for a preliminary injunction. Plaintiffs allege that the challenged Rule creates a form that previously unregistered aliens must complete to comply with statutory registration requirements. Plaintiffs also allege that the Rule directs these previously unregistered aliens to provide biographic and biometric information and always carry proof of registration.

The Court cannot reach the merits of these claims. Plaintiffs have failed to show that they have a substantial likelihood of standing. As organizations, many of their harms are too speculative, and they have failed to show that the Rule will erode their core missions. Nor may Plaintiffs derive standing from their members. Plaintiffs have not shown that any individual member possesses a concrete harm cognizable by an Article III court.

**I.**

**A.**

The story behind this case begins in 1940, when Congress enacted the Smith Act, also known as the Alien Registration Act. Pub. L. No. 76-670, 54 Stat. 670 (codified at 8 U.S.C. § 451) (repealed 1952). This Act instructed aliens (excluding foreign government officials and their families) who were present in the United States, 14 years or older, and who remained in the country for at least 30 days to register and be fingerprinted at a local post office. *See id.* §§ 31(b), 32(b), 33(a), 54 Stat. at 673–674. Upon registration, the alien was issued form AR-3, a registration receipt that itself conferred no immigration status or benefit. *See Policy Manual*, U.S. Citizen and Immigration Services, https://perma.cc/Q87R-AX7Z.

Over the decades, the administrative state would dilute these statutory requirements by regulation. In 1944, the Immigration and Naturalization Service (INS) eliminated the division responsible for universal registration and shifted registration from post offices to ports of entry and INS offices. *See Flexoline Index (Flex)*, U.S. National Archives, https://perma.cc/5PKF-LPZD. And in 1950, the INS suspended the use of the AR-3. 15 Fed. Reg. 579 (Feb. 2, 1950). Instead, the INS subbed in preexisting immigration forms that were only available to aliens with *legal* immigration status, like the Form I-151 for lawful permanent residents or the Form I-94 for aliens with a record of lawful entry. *Id.* at 579–580. So through regulation, aliens who had entered the country illegally were effectively exempt from the statutory registration requirements, since there existed no process by which they could register.

This statutory and regulatory dissonance continued with the passage of the Immigration and Nationality Act of 1952 (INA). This statute supplanted the Smith Act. But it incorporated its registration mandates. *See* Immigration and Nationality Act, Pub. L. No. 82-414, §§ 261–64, 66 Stat. 163, 223–25 (codified at 8 U.S.C. §§ 1201(b), 1301–1306) (1952). The statute requires

that visa applicants be registered through the visa process.  8 U.S.C. §§ 1301, 1201(b).  And for those not registered this way, the INA includes provisions for registration and fingerprinting of all aliens over the age of 14 who remain at least 30 days, and similarly to require parents to register their children.  *See id.* § 1302(a), (b).  It also adds onto the Smith Act by adding a requirement that aliens ages 18 and older carry proof of this registration "at all times."  *Id.* § 1304(e).  More, the INA makes it a crime to "willfully fail[]" to register or be fingerprinted, punishable by a fine or up to six months of imprisonment.  *Id.* § 1306(a).

The implementing regulations are a bit different.  They first provided that the only available registration form for aliens who were not lawful permanent residents was a record of lawful admission and departure (Form I-94).  *See* 17 Fed. Reg. 11532, 11533 (Dec. 19, 1952).  Over the years, as Congress created additional forms of immigration status, the INS added some of these forms as proxies for the registration document demanded by the statute.  But still, this means that the only aliens who are registered are those with legal immigration status; the regulations do not include a nondiscretionary registration form for an alien who entered illegally.[1]  More, in 1960, the INS removed the carry requirement from the Code of Federal Regulations.  *Compare* 22 Fed. Reg. 9805, 9806 (Dec. 6, 1957) (requiring "Carrying and possession of proof of alien registration."), *with* 25 Fed. Reg. 7180, 7181 (July 29, 1960) (no carry requirement).

This scheme persisted for decades.  But in January 2025, President Trump switched course.  He instructed the Secretary of Homeland Security, in coordination with the Attorney

---

[1] At a motions hearing, the Government at first suggested that aliens who illegally entered the United States could obtain a Notice to Appear ("NTA") from a port of entry to satisfy the statutory registration requirement.  Hr'g Tr. 24:3–18.  It then walked back that assertion, conceding that an NTA was a discretionary prosecutorial document that would not be available to every alien upon request.  Hr'g Tr. 42:13–21.

General and the Secretary of State, to "[i]mmediately announce and publicize information about the legal obligation of all previously unregistered aliens in the United States to comply with the requirements of the [registration statutes]"; to "[e]nsure that all previously unregistered aliens in the United States comply with the requirements of the [registration statutes]"; and to "[e]nsure that the failure to comply with the legal obligations of [the registration statutes] is treated as a civil and criminal enforcement priority." Exec. Order No. 141509, *Protecting the American People Against Invasion*, 90 Fed. Reg. 8443, 8444 (Jan. 20, 2025).

Last month, the Department of Homeland Security obeyed. DHS published an Interim Final Rule creating a new online general registration form, Form G-325R. *See* 90 Fed. Reg. 11793, 11795–96, 11800. The Interim Final Rule allows for submitting a Form G-325R to register under the statute and regulations and the proof of filing a G-325R as evidence of registration under the statute and regulations. Plaintiffs argue that this broadens the requirement of registration to aliens who do not have immigration forms obtained through preexisting immigration programs. By its terms, the Interim Final Rule is set to go into effect on April 11, 2025.

**B.**

Before that could happen, Plaintiffs filed this suit, seeking a stay of the effective date of the Interim Final Rule or, in the alternative, a preliminary injunction. *See* Mot. Stay, ECF No. 4, at 1. Plaintiffs are a handful of nonprofit organizations serving immigrant communities: the Coalition for Humane Immigrant Rights Los Angeles (CHIRLA), United Farmworkers of America, Make the Road New York, and CASA. *See* Compl., ECF No. 1, at ¶¶ 6–13. These organizations are member-based and comprise many aliens and citizens who belong to mixed-status families. *See id.*

Plaintiffs allege that the Interim Final Rule was issued in violation of the Administrative Procedure Act because it is a legislative rule but was published without notice or an opportunity for public comment.  Compl. ¶¶ 103–107; *see* 5 U.S.C. §§ 553(b) *and* (c), 706(2)(D).  More, they insist that the Interim Final Rule is arbitrary and capricious.  Compl. ¶¶ 108–109; *see* 5 U.S. § 706(2)(A).  They seek relief before the rule goes into effect.

The Government opposes relief.  Opp'n Br., ECF No. 15, at 1.  It contends that Plaintiffs are unlikely to succeed on the merits of their claim because they lack standing to bring it.  *Id.* And even if this Court had jurisdiction to issue relief, the Government insists that the Interim Final Rule is a procedural rule immune from notice and comment requirements.  *Id.*  More, the Government asserts that the rule is not arbitrary and capricious.  *Id.*

The Court held a motions hearing earlier this week.  *See* Minute Order April 8, 2025. The motion is now ripe for disposition.

## II.

A preliminary injunction is "an extraordinary and drastic remedy" that is "never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (cleaned up).  The movant faces a high bar for success, as it must establish four elements by "a clear showing":  First, that it is likely to succeed on the merits.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). "Merits" here encapsulates "not only substantive theories but also establishment of jurisdiction." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).  Second, the plaintiff must show that it will likely suffer irreparable harm in the absence of injunctive relief.  *Winter*, 555 U.S. at 20.  Third, that the balance of equities favors granting the relief.  *Id.*  And fourth, that the public interest favors the injunction.  *Id.*  Where, as here, the Government is the party

opposing injunctive relief, the latter two factors "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Under 5 U.S.C. § 705, courts may "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."  The same factors for issuance of a preliminary injunction apply to issuance of a stay under § 705.  *District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 15 (D.D.C. 2020).

### III.

Plaintiffs have not shown that they are likely to succeed on the merits.  They have failed to demonstrate that they have standing to bring this suit.  *See Env't Working Group v. Food & Drug Admin.,* 301 F. Supp. 3d 165, 170 (D.D.C. 2018) (noting the party invoking federal jurisdiction bears the burden of establishing it).

Standing is a "bedrock constitutional requirement."  *United States v. Texas*, 599 U.S. 670, 675 (2023).  It requires that a plaintiff "possess a personal stake" in the outcome, which "helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires."  *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024).  Standing doctrine thus "serves to protect the 'autonomy' of those who are most directly affected so that they can decide whether and how to challenge the defendant's action."  *Id.* at 379–80.  And it ensures that "the Framers' concept of the proper—and properly limited—role of the courts in a democratic society" is vindicated, by ensuring decisions meant for the political process are left to the political process.  John Roberts, *Article III Limits on Statutory Standing*, 42 Duke L. J. 1219, 1220 (1993).

6

To establish standing, a plaintiff must show that it "has suffered or likely will suffer an injury in fact"; "that the injury likely was caused or will be caused by the defendant"; and "that the injury likely would be redressed by the requested judicial relief." *All. for Hippocratic Med.*, 602 U.S. at 380. Where, as here, the plaintiffs are organizations, there are two ways to satisfy this test. *See Abigal All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 132 (D.C. Cir. 2006). First, an organizational plaintiff can bring action "on its own behalf," which is known as "organizational standing." *Id.* Second, a plaintiff organization can demonstrate standing by bringing a claim "on behalf of its members," also known as "associational standing." *Id.* Plaintiffs fail both options here.

Start with organizational standing. For an organizational plaintiff to demonstrate that it has suffered an injury in fact, it must show "more than a frustration of its purpose," since mere hindrance to a nonprofit's mission "is the type of abstract concern that does not impart standing." *Food & Water Watch, Inc.*, 808 F.3d at 919 (cleaned up). Instead, for an organization to have standing, it must have "suffered a concrete and demonstrable injury to [its] activities." *PETA v. USDA*, 797 F.3d 1087, 1093 (D.C. Cir. 2015). That is, the defendant's conduct must have "perceptibly impaired the organization's ability to provide services" and the organization must have then "used its resources to counteract that harm." *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015) (cleaned up); *PETA*, 797 F.3d at 1094.

But it is not enough if the organization merely "diverts its resources in response to a defendant's actions" such that it has not been "subjected . . . to operational costs beyond those normally expended" to fulfill its core aims. *All. for Hippocratic Med.*, 602 U.S. at 395; *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995). Instead, the organization must show that the defendant's conduct has forced it to "expend resources in a

manner that keeps [it] from pursuing its true purpose[s]" or has "directly affected and interfered with" the organization's "core . . . activities." *Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1434; *All. for Hippocratic Med.*, 602 U.S. at 395.

For an illustration of this distinction, compare *Food & Water Watch* with *PETA*. In *Food & Water Watch*, one of plaintiff's primary purposes as an organization was "to educate the public about food systems that guarantee safe, wholesome food produced in a sustainable manner." *Food & Water Watch, Inc.*, 808 F.3d at 920. The organization brought a challenge to a new system promulgated by the government that decentralized poultry inspection processes. *See id.* at 910–11. The organizational plaintiff asserted it would suffer harm if the proposed system went into effect, as it "would have to increase the resources that it spends on educating the general public and its members" about poultry inspection protocols and poultry safety. *Id.* at 920. It also claimed that it would be forced to "increase the amount of resources that it spends encouraging its members who wish to continue to eat chicken to avoid poultry" from companies utilizing the new system and "to purchase poultry at farmers' markets or direct from producers." *Id.* But this was not enough. The D.C. Circuit held that the organization lacked standing to challenge the new system, stressing that it had "alleged no more than an abstract injury to its interests." *Id.* Although the organization "allege[d] that [it] w[ould] spend resources educating its members and the public about" the new provisions, nothing in its declarations "indicate[d] that [plaintiff's] organizational activities [were] perceptibly impaired in any way." *Id.* at 921.

Now consider *PETA*. There, PETA challenged the government's refusal to apply the Animal Welfare Act's general animal welfare regulations to birds. 797 F.3d at 1089. The court found PETA had standing to do so. It stressed that one of the "primary" ways PETA accomplished its mission of "prevent[ing] cruelty and inhumane treatment of animals" was by

"educating the public" through "providing information about the conditions of animals held by particular exhibitors." *Id.* at 1094 (cleaned up). But the USDA's refusal to protect birds meant "that the USDA was not creating bird-related inspection reports that PETA could use to raise public awareness." *Id.* at 1091. More, the agency's failure to apply the AWA's animal welfare regulations to birds stripped PETA of the ability to file a formal complaint with the agency to seek redress for mistreatment. *Id.* Thus PETA "had to expend resources to seek relief through other, less efficient and effective means." *Id.* Given these harms, the court concluded that the government's conduct "perceptibly impaired PETA's ability to both bring AWA violations to the attention of the agency charged with preventing avian cruelty and continue to educate the public."[2] *Id.* at 1095. In short, organizations whose activities have been impeded by the government suffer a cognizable injury, while organizations whose missions have only been compromised do not. *Abigail All. for Better Access to Developmental Drugs,* 469 F.3d at 133.

This case looks less like the organizational impediment in *PETA* and more like the organizational expansion in *Food & Water Watch*. Out of the Plaintiffs, only CHIRLA claims organizational standing. Pls.' Reply Br., ECF No. 20, at 5. But there are a few issues with this claim. First, CHIRLA's injuries are highly speculative, sounding in prospective fears about what might happen when the rule takes effect. CHIRLA projects that "it expects thousands of individuals are likely to reach out for assistance and advice with the new registration process." Decl. A. Salas, ECF No. 4-2, ¶ 17. And it expects that "[a]ddressing this volume of community

---

[2] *PETA* sits near the outer edge of organizational standing, as its analysis arguably granted standing in a situation the Supreme Court has said an individual would lack it. *See PETA*, 797 F.3d at 1099–1106 (Millett, J., dubitante). The Supreme Court has also noted that the precedential origin of organizational standing doctrine—*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)—"was an unusual case" that the Court "has been careful not to extend . . . beyond its context." *All. for Hippocratic Med.*, 602 U.S. at 396. This Court heeds these words of caution in applying binding precedent here.

needs will impact multiple programs and will strain its staff and budget." *Id.*  It also expresses anxiety that the anticipated demand for "legal advice and assistance with the registration" may cause it to fail to meet certain grant conditions and thus face withheld disbursements. *Id.* ¶ 19.

But "[a]s [the Supreme Court] ha[s] said many times, conjectural or hypothetical injuries do not suffice for Article III standing." *Clinton v. City of New York*, 524 U.S. 417, 459 (1998) (Scalia, J., concurring in part).  CHIRLA's feared harms have yet to come to fruition, and they very well may never manifest.  They rely on the choices of an unspecified volume of intervening third parties— the aliens who may or may not demand an indefinite amount of CHIRLA's resources.  "When the existence of one or more of the essential elements of standing . . . depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, it becomes substantially more difficult to establish standing." *Scenic Am., Inc. v. U.S. Dep't of Transp.*, 836 F.3d 42, 50 (D.C. Cir. 2016) (cleaned up).  CHIRLA might not be so taxed by a swell of inquiries regarding the registration requirements that they lose funding.  There are no numbers before the Court to even suggest as much, nor is there any evidence from the grant providers that termination looms.  Without facts, the Court has uncorroborated fear.  But Article III requires more than maybes—it demands that harms be "actual or imminent." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  CHIRLA has not shown as much here.

More, CHIRLA cannot demonstrate that the Interim Final Rule has "perceptibly impaired" its mission. *Nat'l Ass'n of Home Builders v. E.P.A.*, 667 F.3d 6, 12 (D.C. Cir. 2011). There is certainly no claim that the Government is blocking CHIRLA from carrying out its mission, unlike the agency's inaction in *PETA,* 797 F.3d at 1094-95, or an agency's restriction of information in *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 935–38 (D.C. Cir.

1986).  Rather, CHIRLA insists that the "community members [it] serves have already begun reaching out to its hotline and at community events with questions about the registration requirement, leading staff to reallocate their time to addressing concerns and revising materials and presentations to address these growing concerns."  Decl. A Salas ¶ 15.

But mere "self-serving observation[s]" that an organization will "have to increase the resources that it spends on educating the general public and its members" about the consequences of government regulation are "insufficient to support standing."  *Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1434.  So are broad claims that an organization has "divert[ed] its resources in response to a defendant's actions."  *All. for Hippocratic Med.*, 602 U.S. at 395.  When a nonprofit merely expands its operations to address increased demands in the communities it serves, its activities have not been tampered with.  *Cf. League of Women Voters of United States v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016) (holding mission of voting rights organizations was perceptibly impaired where proof-of-citizenship laws "presented formidable obstacles to [the organizations'] registration efforts.").  Arguably, these enhanced advocacy efforts are a *fulfillment* of an organization's mission.  In other words, "the Final Rule has not impeded [CHIRLA's] programmatic concerns and activities, but fueled them."  *Elec. Priv. Info. Ctr. v. U.S. Dep't of Educ.*, 48 F. Supp. 3d 1, 23 (D.D.C. 2014).  Indeed, "the expenditures that [CHIRLA] has made in response to the Final Rule have not kept it from pursuing its true purpose as an organization but have contributed to its pursuit of its purpose."  *Id.*

CHIRLA's own descriptions of its pursuits only undergird this conclusion.  CHIRLA describes its mission as "ensur[ing] that immigrant communities are fully integrated into our society with full rights and access to resources."  Decl. A. Salas, ¶ 3.  "In furtherance of its mission, CHIRLA handles the full spectrum of needs of those primarily residing within low-

income immigrant communities" near Los Angeles.  *Id.* ¶ 4.  One of CHIRLA's primary programs is "a hotline where individuals—including members, clients, and community members can call with questions."  *Id.* ¶ 8.  "Given CHIRLA's deep community ties and longstanding legal services programs, CHIRLA is often a first point of contact for individuals seeking information about recent policy changes impacting immigrants."  *Id.* ¶ 8.

It would be odd if CHIRLA could assert that its core services have been impaired by using these very services to educate its members about the Interim Final Rule.  Sure, the Rule may have caused CHIRLA to rearrange some labor and resources to meet the increased demand from this unexpected policy.  But organizations have not suffered a concrete injury just because shifts in government policy demand shifts in internal operations.  *Accord Env't Working Group,* 301 F. Supp. 3d at 172.  If that were the case, an organization could claim injury-in-fact nearly any time there was a change in the law relevant to its mission.  That cannot be the law.  And indeed it is not—organizations only suffer concrete injury if a challenged government action has made their advocacy efforts "more difficult to achieve, thereby requiring 'operational costs beyond those normally expended to . . . educate' about matters that might relate to the organization['s] mission."  *Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 573 F. Supp. 3d 324, 343 (D.D.C. 2021) (quoting *Nat'l Taxpayers Union*, 68 F.3d at 1434).  CHIRLA simply has not shown that here.

That leaves the possibility of associational standing.[3]  An organization has standing to bring suit on behalf of its members when three requirements are met.  First, "its members would

---

[3] Many legal scholars have doubted the constitutionality of associational standing.  *See All. for Hippocratic Med.*, 602 U.S. at 400 (Thomas, J., concurring) ("I thus have serious doubts that an association can have standing to vicariously assert a member's injury) (citing amici).  The Court, of course, is bound by existing precedent.

otherwise have standing to sue in their own right." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Second, "the interests it seeks to protect are germane to the organization's purpose." *Id.* And third, "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* Plaintiffs here stumble at the first step. They have failed to show that any of their individual members would independently have standing to challenge the Interim Final Rule.

Associational standing fails for two independent reasons. The first problem is that Plaintiffs have failed to adduce sufficient evidence to support their allegations. The only allegations of concrete harm to individual members that Plaintiffs present are in the form of pseudonymous hearsay. That is, the organizations are describing the harms their members have suffered while using false names for those members. *See, e.g.*, Decl. G. Escobar ¶ 14 ("ME is a CASA member" who "is afraid to register, because it could expose himself and his family, including his wife who is also undocumented, to the risk of detention and deportation."). The Court has no sworn testimony from the members themselves. More, these pseudonymous reports are contained in affidavits submitted by the organizations, which are themselves hearsay evidence. *See Karem v. Trump*, 404 F. Supp. 3d 203, 215 & n.3 (D.D.C. 2019), *aff'd as modified*, 960 F.3d 656 (D.C. Cir. 2020); *see also Humane Soc. v. Animal & Plant Health Inspec. Serv.,* 386 F. Supp. 3d 34, 44 (D.D.C. 2019) (refusing to rely on "second-hand, unsubstantiated accounts" in defendant's declarations). This means all the Court has to go on is hearsay-within-hearsay.

While "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits," and courts often rely on affidavits "for the limited purpose of determining whether to award a preliminary injunction,"

stretching these exceptions to hearsay-within-hearsay strikes the Court as a step too far. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010). Layered hearsay innately lacks credibility, as it only exacerbates the preexisting veracity issues inherent to typical hearsay. This problem becomes even more pronounced when the underlying testimony is presented under pseudonym, leaving the Court and defense completely unable to verify the testimony. The Court is therefore very wary of this evidence.[4] Most importantly, this nameless double hearsay is going towards the Court's jurisdiction. And the Court must abide by its unflagging obligation to police its own constitutional bounds. *See Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 384 (1884) ("[T]he judicial power of the United States must not be exerted in a case to which it does not extend, even if both parties desire to have it exerted"). Asserting the formidable authority of Article III based only on nameless double hearsay strikes the Court as an exercise in judicial arrogation. The Court declines to engage in such acts of personal aggrandizement.

But even if the Court were to credit the double hearsay, the Plaintiffs have failed to articulate a viable theory of associational standing. Plaintiffs' primary conception of their members' injury is that the members are "directly regulated parties." Pl's Reply at 2. That is, Plaintiffs insist that their members have suffered an injury-in-fact by having "to submit Form G-325R, provide biometrics, and carry proof of this registration as proscribed by the IFR at all times or face arrest and federal prosecution." *Id.*

---

[4] Plaintiffs point to a handful of cases to argue that this evidence can properly be considered. *See* Pls.' Notice Suppl. Authority, ECF No. 26, at 1–2. But only one of the cases that Plaintiffs cite permitted double hearsay. *S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, 2020 WL 3265533, at *3 n.2 (D.D.C. June 17, 2020). That case is different. There, one of the challenged affidavits was not under pseudonym, came directly from one of the organization's clients, and tended to verify the accuracy of testimony contained in the other affidavits. *Id.* at *3; Decl. A. Sanchez Martinez, ECF No. 105-2, No. 1:18-cv-00760.

But Plaintiffs have failed to show that the mere requirement to abide by the law—even if true that the accompanying regulation flouted procedural requirements when enacted—constitutes a concrete injury for standing purposes.  Plaintiffs' briefing and oral argument had no claim that such a harm "has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021).  That inquiry is "[c]entral to assessing concreteness."  *Id.* at 417.

As made clear by the Supreme Court in *TransUnion*, plaintiffs must "identif[y] a close historical or common-law analogue for their asserted injury" to demonstrate their asserted injury is concrete.  *Id.* at 424.  Certain harms readily fit this bill, such as "traditional tangible harms" like "physical harms and monetary harms."  *Id.* at 425.  "Various intangible harms can also be concrete," such as those traditionally remediable by the common law of contract, tort, and property.  *See id.* (listing reputational harm and intrusion upon seclusion as examples).  More, "harms specified by the Constitution itself" are thought to be traditionally cognizable.  *Id.*

Plaintiffs have not shown how merely being subject to a regulation—without incurring some other injury—fits within this framework.  They have not attempted to analogize their members' predicament to harms traditionally cognizable in American courts.  Nor does a historical analogue so readily come to mind such that explanation could be thought superfluous.  But "[a]s the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing."  *Id.* at 430–31.

Plaintiffs point to *City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018), to argue that subjection to new regulatory requirements can confer an injury in fact.  Pls.' Reply at 3.  This reliance is misplaced.  First, this case was decided before the sea change *TransUnion* imparted upon standing doctrine.  *See Dinerstein v. Google, LLC*, 73 F.4th 502, 522 (7th Cir.

15

2023) (calling *TransUnion* "a watershed decision on the standing doctrine.").  Thus the Circuit had no occasion to ponder whether the plaintiff's asserted harm was sufficiently analogous to a historically recognized harm, as *TransUnion* demands.

And second, the case is readily distinguishable.  In *City of Clarksville*, the court found that a regulated party had standing to appeal an adverse agency adjudication that subjected the plaintiff to ongoing data retention obligations.  *Id.* at 482.  Potential common law analogues abound in the data retention context that Plaintiffs have not shown here.  For instance, forced data retention imposes real costs on companies, the prototypical type of concrete harm.  *City of Clarksdale* cannot excuse the Plaintiffs from meeting their obligation under *TransUnion* to show their "injury bears a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts."  *TransUnion*, 594 U.S. at 432.

It is true that courts have occasionally found standing when a plaintiff brings a preenforcement challenge to a law he fears will subject him to criminal penalties if enforced. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).  But in those cases, the plaintiffs also had to show that the challenged law proscribed constitutionally protected conduct in which they imminently intended to engage, *Seegars v. Gonzales*, 396 F.3d 1248, 1251–52 (D.C. Cir. 2005), or that they would "have to take significant and costly compliance measures" to avoid prosecution.  *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988).

In other words, standing in these risk-of-prosecution cases requires that a plaintiff to show he has been put to an intolerable choice—on the one hand, he can refrain from engaging in protected conduct and incur substantial costs to avoid being penalized under an unlawful measure.  On the other hand, he can violate the measure and risk unjustified prosecution. Standing doctrine in preenforcement challenges recognizes that courts can intervene before this

16

archetypal catch-22. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) ("[A] plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct *arguably affected with a constitutional interest*, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.") (emphasis added) (cleaned up); *see also Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96, 108 n.5 (D.D.C. 2016) (rejecting plaintiff's argument that "the injury-in-fact requirement is *automatically* met, if the law is aimed directly at the plaintiff, who, if its interpretation of the statute is correct, is placed at risk of criminal prosecution.").

But the Plaintiffs here have not shown that their members have been trapped in such a paradox. If there are costly compliance measures, Plaintiffs are mum as to their amount. *See also* 90 Fed. Reg. 11797 ("DHS will incur additional costs due to the added activities from the collection of biometrics given the impacted population of aliens do not pay fees for registration or biometrics.").

Nor have Plaintiffs shown that the Interim Final Rule penalizes constitutionally protected conduct. Plaintiffs insist that the Rule will force their members "to reveal that they entered the United States without inspection, in violation of 8 U.S.C. § 1325, a federal criminal misdemeanor." Mot. Stay at 32. According to Plaintiffs, "[t]his compelled admission violates these members' Fifth Amendment right against self-incrimination." *Id.* Indeed, a major thrust in Plaintiffs' motion relates to the potential Fifth Amendment implications their members face by completith Form G-325R.

This line of attack fails factually and legally. Factually, because Plaintiffs have failed to demonstrate that any of their members would actually be subject to criminal prosecution based on their answers to Form G-325R. A charge for entry without inspection usually carries a statute

of limitations of five years, which begins to run once a defendant enters the United States.  18

U.S.C. § 3282; Robert J. McWhirter & Jon M. Sands, *A Primer for Defending a Criminal

Immigration Case*, 8 Geo. Immigr. L. J. 23, 38 (1994).  Nearly all of Plaintiffs' members have

been residing in the United States for far longer than five years.  *See* Decl. A Salas ¶¶ 25–27;

Decl. E. Strater, ECF No. 4-3, ¶¶ 19–22; Decl. G. Escobar ¶¶ 13–19; Decl. S. Fontaine, ECF No.

4-5, ¶¶ 24–28.  And Plaintiffs conceded that their members do not have other crimes to report on

the G-325R.  Hr'g Tr. at 10:10–13.  Thus for nearly all of Plaintiffs' members, the Fifth

Amendment right against self-incrimination is not implicated.

There is a possible exception: "Ursula," a CHIRLA member.  Decl. A Salas ¶ 23.  Ursula

"entered the U.S. without inspection in 2023 as an unaccompanied minor when she was 17."  *Id.*

Perhaps she could be subject to prosecution for an illegal entry misdemeanor.  Yet Plaintiffs

waffled on whether Ursula would be subject to criminal prosecution as an adult for illegal entry

as a juvenile.  Hr'g Tr. 10:1–3.  But does the Government even prosecute juveniles for

misdemeanor illegal entry?

Because the burden is on the Plaintiffs to establish their standing, the Court will not go

digging into the intricacies of immigration law to deduce whether one member out of dozens

could assert a potential infringement of her Fifth Amendment right.  *See Lujan v. Defs.* of

*Wildlife*, 504 U.S. 555, 561 (1992).

But even if Ursula could be prosecuted, her Fifth Amendment claim would fail as a

matter of law.  A plaintiff can rest her standing on a violation of her right against self-

incrimination in two circumstances.  First, "where a plaintiff remains silent, asserts the Fifth

Amendment privilege against self-incrimination, and is then subjected to some sanction or

penalty for refusing to testify, [s]he clearly can assert a Fifth Amendment claim."  *Nat'l Treasury*

*Emps. Union v. U.S. Dep't of Treasury*, 25 F.3d 237, 241–42 (5th Cir. 1994). And "[s]econd,

where a plaintiff has *refrained* from invoking the privilege, given an incriminating statement,

and then seeks to bar the use of the statement in a later criminal proceeding . . . a justiciable

claim will surely exist." *Id.* at 242. Outside of these two circumstances, a plaintiff has not

suffered a violation of her right against self-incrimination. *See also Chavez v. Martinez*, 538

U.S. 760, 770 (2003) ("[A] violation of the constitutional *right* against self-incrimination occurs

only if one has been compelled to be a witness against himself in a criminal case.") (plurality

opinion of Thomas, J.). In other words, "a Fifth Amendment self-incrimination claim is not ripe

until a claim of the privilege is actually made." *Carman v. Yellen*, 112 F.4th 386, 404 (6th Cir.

2024).

Plaintiffs do not allege that any of their members have actually invoked their Fifth

Amendment right, only to be rebuffed. Nor do Plaintiffs even allege that an invocation of the

right against self-incrimination on Form G-325R would lead to sanctions. At this point, then,

any claims that the members risk a violation of their right against self-incrimination are

speculative and premature. *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286, 291 (D.C.

Cir. 1993) ("Ordinarily, a person must invoke the privilege in order to gain its advantage . . . .

The reason is apparent: The Fifth Amendment does not forbid the government from asking

questions and it does not forbid the government from taking the answers.").

That leaves the Plaintiffs' assertions that Form G-325R chills their members' protected

speech. They assert that "CASA and MRNY members fear that the new registration process,

which requires them to report their organizing and advocacy work, will cause immigration

authorities to target them based on their First Amendment protected activities." Mot. Stay at 32;

*see, e.g.*, Decl. G. Escobar ¶ 13 ("The IFR has caused [YL] to become more afraid to speak out because she fears that it could expose her and her son to targeting by the federal government.").

But "allegations of a subjective chill are not . . . adequate" to confer standing. *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984) (cleaned up) (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)). Instead, a plaintiff must allege an "imminence of concrete, harmful action such as threatened arrest for specifically contemplated First Amendment activity." *Id.* at 1380. Here, all Plaintiffs contend is that their members have engaged in self-censorship because they have a conjectural fear that they may be targeted by the Government for their speech. In other words, they have not "point[ed] to anything beyond [their] own subjective apprehension and a personal (self-imposed) unwillingness to communicate." *Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 610 (6th Cir. 2008). What they have *not* done is offered any evidence that they face a "credible threat of prosecution" *for their speech* "under a statute that appears to render [their] arguably protected speech illegal." *Am. Library Ass'n v. Barr*, 956 F.2d 1178, 1194 (D.C. Cir. 1992). But under controlling law, that is what they had to do. *Laird*, 408 U.S. at 13–14 (holding plaintiffs lacked standing on chilling theory where they could not show "claim of specific present objective harm or a threat of specific future harm" apart from self-imposed chilling).

**IV.**

In sum, Plaintiffs are not likely to succeed on the merits of their claim because they have failed to demonstrate that they have a "substantial likelihood" of standing.  *Food & Water Watch, Inc*., 808 F.3d at 913.  Their Motion for a Stay and Preliminary Injunction is accordingly **DENIED.**

**SO ORDERED**.


Dated: April 10, 2025                                    TREVOR N. McFADDEN, U.S.D.J.