## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

COALITION FOR HUMANE IMMIGRANT
RIGHTS, *et al,*

            Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al,*

            Defendants.

Civ. A. No. 25-0943 (TNM)

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## MOTION FOR INJUNCTION PENDING APPEAL

In their Motion for Injunction Pending Appeal ("Mtn.," ECF No. 42), Plaintiffs essentially rehash the arguments they previously made in seeking a preliminary injunction; arguments which this Court found lacking when it denied their Motion for lack of standing. *See* Memorandum Order ("Order," ECF No. 27) at 6. Plaintiffs appealed that denial (ECF No. 41) and now seek a stay pursuant to Federal Rule of Civil Procedure ("Rule") 62(d).

This Court should deny the Motion for the same reasons it already denied Plaintiffs' initial request for a preliminary injunction: Plaintiffs lack standing to pursue their claims. And while the Court did not need to reach the additional grounds articulated in Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction ("Defs' Opp. to Inj.," ECF No. 15), those grounds—the balance of equities and the public interest—nevertheless favor denial of the Motion here.

## INTRODUCTION

Defendants will not completely reproduce here the background of this matter, which has already been briefed; nevertheless, a quick summary may be helpful for the Court.

As this Court recognized (Order at 2), aliens to this country have been required to register with the federal government since 1940, when the Smith Act was enacted.  8 U.S.C. § 451 (repealed June 27, 1952, pursuant to the Immigration and Nationality Act).  Those requirements have remained in the law, even after the Smith Act was superseded by the Immigration and Nationality Act ("INA").  *See* 8 U.S.C. §§ 1301-1306.  And although the implementing regulations have varied over time—and have not consistently provided a registration form applicable to all aliens—the underlying statutory requirements have remained unchanged for over eighty years. *See* Order at 3-4.  Relevant here, the Department of Homeland Security ("DHS") published the Interim Final Rule ("IFR") to allow for the use of a newly created Form G-325R, Biographic Information (Registration) ("G-325R") as a means of registration, and USCIS Proof of Alien G-325R Registration as evidence of registration.  *See* 90 Fed. Reg. 11793, 11795-11796, 11800. While the Form G-325R has been added to the registration scheme, the registration scheme itself is not new, and the new form is now one of multiple means through which an alien may register. *See* 8 C.F.R. §§ 264.1(a), (b).

Plaintiffs filed suit to block the implementation of the IFR and the use of Form G-325R as a means of registration.  After briefing, this Court concluded that Plaintiffs had not demonstrated standing and, as such, had not proven a likelihood of success on the merits.  *See generally* Order. Although the parties briefed the remaining three prongs of the preliminary injunction analysis— irreparable harm, balance of the equities, and public interest—this Court did not reach those arguments as it found the lack of standing to be dispositive.  *Id.*

## STANDARD OF REVIEW

An injunction pending appeal is an "extraordinary remedy."  *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 324 (D.D.C. 2018); *see also John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (per curiam).  Because it is "an intrusion into the ordinary process[es] of

administration and judicial review," it is "not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nat'l Ass'n of Mfrs. v. NLRB*, Civ. A. No. 11-1629 (ABJ), 2012 WL 1929889, at \*1 (D.D.C. Mar. 7, 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)); *see also MediNatura, Inc. v. FDA*, Civ. A. No. 20-2066 (RDM), 2021 WL 1025835, at \*6 (D.D.C. Mar. 16, 2021). Rather, the moving party bears the burden of showing that this remedy is warranted. *See McCammon v. United States*, 588 F. Supp. 2d 43, 47 (D.D.C. 2008).

The standards for evaluating a motion for an injunction pending appeal are "substantially the same as those for issuing a preliminary injunction," meaning that the movant generally "must establish" that (1) "they are likely to succeed on the merits," (2) "they are likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in their favor," and (4) "an injunction is in the public interest." *Alcresta Therapeutics*, 318 F. Supp. 3d at 324 (cleaned up). These are "stringent requirements." *Archdiocese of Wash. v. WMATA*, 877 F.3d 1066, 1066 (D.C. Cir. 2017) (per curiam). The first two "prongs" typically are the "most critical." *See Citizens for Responsibility & Ethics in Wash. v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam) (internal quotation marks omitted). The last two prongs, however, are by no means an afterthought. *See, e.g.*, *Fed. Maritime Comm'n v. City of Los Angeles*, 607 F. Supp. 2d 192, 203 (D.D.C. 2009) (noting how, in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), the Supreme Court reversed a preliminary injunction despite "assuming irreparable harm" and not "addressing the underlying merits").

"[I]n at least some circumstances an injunction pending appeal may be appropriate even if the court that just denied injunctive relief believes its analysis in denying that relief is correct such that the movant cannot show a likelihood of success." *Republican Nat'l Comm. v. Pelosi*, Civ. A. No. 22-659 (TJK), 2022 WL 1604670, at \*3 (D.D.C. May 20, 2022) (quotations omitted,

cleaned up).  Accordingly, "in rare cases, the threat of irreparable harm may be so grave and the balance of equities may favor" the movant "so decisively that an injunction pending appeal . . . may be proper," even without a likelihood of success on the merits, so long as the movant establishes a "serious legal question" on the merits and shows that "the other three factors tip sharply" in its favor.  *See MediNatura*, 2021 WL 1025835, at *6 (cleaned up); *see also Cigar Ass'n of Am. v. U.S. FDA*, 317 F. Supp. 3d 555, 560–61 & n.4 (D.D.C. 2018).  That said, where the "relief sought is an injunction on the coordinate branches of government . . . it is even more important that the three remaining factors outweigh the lack of likelihood of success on the merits." *See Trump v. Thompson*, Civ. A. No. 21-2769 (TSC) (D.D.C. Nov. 10, 2021), ECF No. 43 at 4–5. After all, "courts must take care not to unnecessarily 'halt the functions of a coordinate branch.'" *Trump v. Thompson*, 20 F.4th 10, 48 (D.C. Cir. 2021) (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975)).

## ARGUMENT

Plaintiffs spend almost the entirety of their Motion (at 3-16) arguing that they are likely to succeed on the merits, the very argument which this Court found lacking.  *See* Order at 6.  In making their argument, Plaintiffs offer no new legal arguments, theories, or analysis, and instead argue that (a) this Court was incorrect, and (b) the submission of additional affidavits overcomes the lack of evidence on which this Court partially based its decision.  In doing so, Plaintiffs both fail to undermine this Court's analysis and fail to appreciate the importance of the other three factors at this stage.

### I.  Plaintiffs Are Not Likely to Succeed on the Merits

#### A.  Plaintiffs Lack Standing to Pursue Their Claims

Plaintiffs challenge the IFR and assert claims on behalf of a broad segment of the immigrant population, both legal and undocumented, despite not being directly subject to the IFR

themselves.  As such, Plaintiffs have failed to establish either organizational or associational standing, which this Court has already found.  Order at 6-20.  Plaintiffs now insist that the Court was wrong.

As this Court held (Order at 7-10), Plaintiff CHIRLA had not established organizational standing, both because the asserted injuries were speculative and because the IFR had not impaired CHIRLA's mission, merely fueled an expansion of CHIRLA's operations.  In the Motion, CHIRLA doubles down on its assertion that the already identified "harms"—assisting undocumented aliens with completing the Form G-325R, answering questions about the registration process, and providing legal representation for clients in connection with alien registration—impede CHIRLA's mission.  Motion at 12-14.  But as this Court already ruled, CHIRLA's mission, by its own description, is "ensuring that immigrant communities are fully integrated" and serving as a "first point of contact for individuals seeking information about recent policy changes impacting immigrants."  Order at 11-12 (citations omitted).  The "harms" CHIRLA identifies are merely an expansion of those core functions:  assisting aliens in meeting their legal obligations to register and answering questions about registration fall directly within CHIRLA's mission; they are not an impediment to that mission as CHIRLA claims.  *Cf. PETA v. Dep't of Agric.*, 797 F.3d 1087, 1094-95 (D.C. Cir. 2015) (finding that government action which blocks the organization's mission can give rise to standing).  Under the most generous reading of the Motion, CHIRLA at best has chosen to "rearrange some labor and resources to meet the increased demand from this unexpected policy."  Order at 12.  This is not a concrete injury sufficient to support organizational standing.  *Id.* (citing *Env't Working Group v. FDA*, 301 F. Supp. 3d 165, 170 (D.D.C. 2018)).  Again, the IFR does not change the long-standing requirement for aliens to register, codified in federal law for over eighty years; the mere introduction of a new avenue of

registration for which CHIRLA now provides education, resources, and advice is not an impediment to its mission.

Similarly, this Court found that associational standing did not exist because no individual member had independent standing to challenge the IFR.  Order at 13.  Specifically, the Court found that the use of pseudonymous hearsay—and double-hearsay—affidavits and the "mere requirement to abide by the law" did not suffice to establish a concrete injury.  Order at 13-15.  In response, Plaintiffs first offer additional pseudonymous double-hearsay declarations (Motion, Exs. C-N, ECF Nos. 42-3 to 42-14) and again insist that they suffice to establish harm, contrary to this Court's ruling.  Plaintiffs cite to additional cases in support of this approach, but none of these cases actually decided the question of whether pseudonymous declarations could suffice, but rather assumed the declarations were sufficient, apparently in the lack of any opposition.  *See Make the Rd. New York v. McAleenan*, 405 F. Supp. 3d 1, 32 (D.D.C. 2019) (accepting pseudonymous declarations without any indication of opposition from the opposing party and without addressing the questions of hearsay and credibility); *NAACP v. Trump*, 298 F. Supp. 3d 209, 225 & n.10 (D.D.C. 2018) (accepting pseudonymous declarations and noting that "the government does not seriously dispute" the declarations).  But that issue has been raised here—and Defendants press it now—and Plaintiffs make no effort to overcome the Court's analysis or the authority on which it relied.  *See* Order at 12-13; *see also Young America's Foundation v. Gates*, 560 F. Supp. 2d 39, 50 (D.D.C. 2008) (highlighting "certain difficulties" in basing associational standing on anonymous declarations); *Doe v. Von Eschenbach*, Civ. A. No. 06-2131 (RMC), 2007 WL 1848013, at *3 (D.D.C. June 27, 2007) (finding it "impossible [] to litigate standing" with a pseudonym).

But even leaving this evidentiary question aside, Plaintiffs offer no further basis from which this Court can now find the existence of a concrete injury. Plaintiffs reiterate (at 5-7) their insistence that they are "directly regulated parties" because their members must now submit the Form G-325R and carry proof of registration, but both the requirement to register and the requirement to carry proof of registration are not new. *See* 8 U.S.C. §§ 1301-1306. As this Court has already held, the "injury" of which Plaintiffs complain is nothing more than "the mere requirement to abide by the law" which does not suffice for standing. Order at 14-15. Plaintiffs' attempt to distinguish *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), is unavailing because Plaintiffs make no effort to grapple with the central holding from that case: that the harm alleged "has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 440; *see also* Order at 15-16. Instead, Plaintiffs merely reassert the conclusory opinion that their members "are indisputably subject" to a concrete harm and the incorrect assertion that "the IFR directly imposes a series of new legal obligations." Motion at 6. And Plaintiffs explicitly disclaim that they are bringing constitutional claims and that they must therefore meet the more stringent requirements of pre-enforcement challenge standing (Motion at 8-10), but in the same breath insist that their standing is based upon the alleged First and Fifth Amendment impact of the IFR (Motion at 9). But none of these connects the long-standing statutory requirement of registration and the IFR's creation of a new means by which an alien can comply with that statute with a "harm traditionally recognized" merely by complying with that statute. *Cf. TransUnion*, 594 U.S. at 440.

Plaintiffs lack standing, as this Court has found. Order at 21. Plaintiffs' Motion offers no new support for their claims, nor does it offer any basis from which this Court can—or should—

conclude that it was incorrect in that finding. This Court should instead deny the Motion for the same reasons already articulated: Plaintiffs lack standing.

### B. The Notice and Comment Requirement Does Not Apply

Plaintiffs spend almost the entirety of their Motion arguing standing, giving the remaining question of whether they are likely to actually succeed on the APA question a mere paragraph. Motion at 3-4. But this question, which the Court did not reach, is not so easily dismissed.

The APA specifically exempts from its notice and comment requirements, as relevant here, "rules of agency organization procedure, or practice." 5 U.S.C. § 553(b)(A); *see AFL-CIO v. NLRB*, 57 F.4th 1023, 1034-35 (D.C. Cir. 2023). Procedural rules are ones that are "primarily directed toward improving the efficient and effective operations of an agency." *AFL-CIO*, 57 F.4th at 1034 (cleaned up). A "'critical feature' of the procedural exception 'is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter *the manner in which the parties present themselves* or their viewpoints to the agency.'" *JEM Broad. Co., Inc. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) (quoting *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980)) (emphasis added). Moreover, although a procedural rule generally may not "encode[] a substantive value judgment or put[] a stamp of approval or disapproval on a given type of behavior," *American Hospital Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C.Cir.1987), "the fact that the agency's decision was based on a value judgment about procedural efficiency does not convert the resulting rule into a substantive one," *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282 (D.C. Cir. 2000).

As Defendants made clear in their Opposition to Plaintiff's Motion for Injunction (ECF No. 15), the statutory registration obligation has existed for more than eighty years, and the IFR merely provides a new means by which an alien can comply with that requirement; in other words, an alteration to "the manner in which [aliens] present themselves" to DHS. *See JEM Broad. Co.*,

22 F.3d at 326. The IFR does not affect individuals' substantive interests or encode any value judgments about their behavior. *See AFL-CIO*, 57 F.4th at 1042 (concluding that a provision was not a procedural rule "because it encodes a substantive value judgment about the type of [union election] observers that best serve" the agency's own policy goals) (cleaned up); *JEM Broad Co.*, 22 F.3d at 326 ("The issue . . . is one of degree, and our task is to identify which substantive effects are sufficiently grave so that notice and comment are needed to safeguard the policies of the APA") (cleaned up). Nor does it establish any sort of new substantive policy, but is instead nothing more than an improvement in the agency's own procedures, intended to "improve registration outcomes" for different groups of aliens by "add[ing] another method . . . for compliance with existing statutory registration requirements." 90 Fed. Reg. at 11796; *see id.* at 11797 ("This rule fills a gap in registration by adding an online option to comply with existing statutory registration requirements."). [1]

---

[1] Indeed, this IFR as an exception to notice and comment rulemaking is by no means alone in the history of 264.1. In fact, the history of the regulation is replete with similar additions of documents. *See* 82 Fed. Reg. 94231-01, 94233 (Dec. 23, 2016) (removing NSEERS based on exception to notice and comment as "impracticable, unnecessary or contrary to the public interest."); 81 Fed. Reg. 91646-01 (Dec. 19, 2016) (adopting interim amendments to the regulations from Mar. 27, 2013, which were published without notice and comment as relating to agency procedure); 78 Fed. Reg. 18457-01 (Mar. 27, 2013) (adding online I-94 based on exception for "rules of agency organization, procedure, or practice"); 39 Fed. Reg. 10885 (March 22, 1974) (adding form I-221S (Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien) to § 264.1(b) without notice and comment as "adding a form to the listings"); 36 Fed. Reg. 16646 (June 26, 1973) (new paragraph (h) to 264.1 (permitting use of a copy of Form I-94) without notice and comment because it "grants and exemption"); 35 Fed. Reg. 12268 (July 31, 1970) (adding Form I-485A (Application by Cuban Refugee for Permanent Residence to § 264.1(a) without notice and comment as "relat[ng] to agency procedure."); 30 Fed. Reg. 13862 (Nov. 2, 1965) (amending listing of Forms I-90 (Application by Lawful Permanent Resident Alien for Alien Register Receipt) and I-102 (Application by Nonimmigration alien for Replacement of Arrival Document or for Alien Registration) under Section § 264.1(b) without notice and comment as "relat[ing] to agency procedure"); 26 Fed. Reg. 3455 (April 22, 1961) (waived fingerprinting without notice and comment because the amendment "relieve[s] restrictions and confer[s] benefits upon persons affected thereby."); 25 Fed. Reg. 10495 (Nov. 2, 1960) (added the Form I-590

Thus, because the IFR merely improves existing agency processes to make available an additional method to register, the IFR is primarily directed toward the manner by which aliens "present themselves or their viewpoints to the agency." *Glickman*, 229 F.3d at 280; *see Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 5 (D.C. Cir. 2011) (even "a rule with a 'substantial impact' upon the persons subject to it is not necessarily a substantive rule" (citing *Pub. Citizen*, 276 F.3d at 640-41)); *Lamoille Valley R. Co. v. I.C.C.*, 711 F.2d 295, 328 (D.C. Cir. 1983) (holding that an order changing the schedule for an adjudication, including when parties were to submit briefing, was a procedural rule); *Ranger v. FCC*, 294 F.2d 240, 244 (D.C. Cir. 1961) (while holding that a rule was procedural, noting that "no substantive rights were actually involved by the regulation itself" even if "failure to observe it might cause the loss of substantive rights").

### C. The IFR is not Arbitrary or Capricious.

The scope of APA review is narrow and deferential, and a court cannot substitute its judgment for that of the agency. *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency need only articulate "a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (internal quotation and citation omitted). The agency appropriately relies on its experience in exercising its judgment. *See id.* at 29 ("It is not infrequent that the available data does not settle a regulatory issue[,] and the agency must then exercise its judgment in moving from the facts and probabilities on the record to a policy conclusion."). Thus, a reviewing court's task is only to determine whether an agency has engaged in "reasoned decisionmaking." *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (internal citation and quotation marks omitted); *see Prometheus Radio Project*, 592 U.S. at 423 ("A court simply ensures that the

_____

(Registration for Classification as Refugee-Escapee) to § 264.1 without notice and comment as "relat[ing] to agency procedure and management.").

agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision").

The IFR easily meets that deferential standard. The IFR was promulgated to provide an additional registration pathway for aliens required to register under the existing statutory framework prescribed in 8 U.S.C. §§ 1301–1306. 90 Fed. Reg. at 11795. It also serves to partially implement section 7 of Executive Order 14159, Protecting the American People Against Invasion (Jan. 20, 2025), 90 FR 8443 (Jan. 29, 2025). 90 Fed. Reg. at 11795. Section 7 directs the Secretary, among other matters, to ensure that all previously unregistered aliens in the United States comply with 8 U.S.C. §§ 1301-1306. 90 Fed. Reg. at 11795. The IFR is reasonably related to these objectives.

Under 8 U.S.C. § 1302(a), "every alien" 14 years of age or older who remains in the United States for thirty days or longer is subject to registration if not already registered. Although 8 C.F.R. § 264.1(a) provides forms that satisfy an alien's registration requirements and means of showing evidence of registration, not all aliens who are subject to the registration requirements have a straightforward way to take advantage of those forms. For example, in some cases, the acceptable evidence of registration at 8 C.F.R. § 264.1(b) is the result of an approved application only, which may leave denied or pending applicants without any acceptable evidence that they have complied with the requirement to register. The IFR provides a convenient additional method to comply with statutory registration requirements by prescribing a registration form available to all aliens regardless of their status, in addition to the other forms already listed.

This is critical because an alien's willful failure or refusal to apply to register or to be fingerprinted is punishable by a fine of up to $5,000 or imprisonment for up to six months, or both. 8 U.S.C. 1306(a); *see also* 18 U.S.C. 3571. The same applies to an alien's parent or legal

guardian's willful failure or refusal to register.  *Id.*  The IFR simply provides an additional mechanism for aliens to comply with registration requirements.  The IFR does not impose any new registration or fingerprinting obligations separate from the current statutory obligations.  An alien who has previously registered consistent with 8 C.F.R. § 264.1(a), or an alien who has evidence of registration consistent with 8 C.F.R. § 264.1(b), need not register again, although such an alien is subject to ongoing change of address reporting requirements under 8 U.S.C. § 1305(a) and 8 C.F.R. § 265.1.

## II.  The Balance of Equities and the Public Interest Favor Defendants

In the context of an injunction pending appeal, "even if irreparable injury might otherwise result to the appellant," the injunction is "not a matter of right" and the movant bears a heavy burden of establishing each of the other three factors.  *Nat'l Ass'n of Mfrs.*, 2012 WL 1929889, at *1.  As established above, Plaintiffs lack standing and are unlikely to succeed on the merits.  They are also unable to establish the remaining two prongs:  the balance of equities and the public interest.  *See Winter*, 555 U.S. at 20.  Plaintiffs must specifically establish that these last two factors favor the Plaintiffs decisively; "where balancing the equities 'results roughly in a draw,' the 'sound disposition' of a request for injunctive relief 'depends on a reflective and attentive appraisal as to the outcome on the merits.'"  *Republican Nat'l Comm.*, 2022 WL 1604670, at *5 (quoting *Serono Labs.*, 158 F.3d at 1326).  As already shown above, Plaintiffs are unlikely to succeed on the merits; "the sound disposition is to deny the motion" for an injunction.  *Id.*

Here, the effect of an injunction would be to bar the Government from enforcing the immigration statutes which have been in place for over eighty years, essentially blocking the administration of the laws by the Executive and going against the public interest.  "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012)

12

(Roberts, C.J., in chambers) (cleaned up). While Plaintiffs may be correct that the statutory registration requirement has not been consistently enforced over that time, this does not provide a basis on which the enforcement of those laws can now be estopped. "An administrative agency charged with protecting the public interest is not precluded from taking appropriate action [because of] lack of action on the part of public officials." *Washington Tour Guides Ass'n v. Nat'l Park Serv.*, 808 F. Supp. 877, 882 (D.D.C. 1992) (quoting *Pacific Shrimp Co. v. United States*, 375 F. Supp. 1036, 1042 (W.D. Wash. 1974)). "Plaintiffs may well have been allowed" to violate the laws "for many years," but the "government cannot be estopped from fulfilling its duty to protect the public interest. . . ." *Id.* There is undeniably a strong public interest in the enforcement of statutes enacted by Congress, and there is a concomitant equitable harm associated with "halt[ing] the functions of a coordinate branch" of government, as would be the result here. *See Trump*, 20 F.4th at 48. Whatever interests and equities Plaintiffs can bring to bear on this analysis, they cannot outweigh these strong public interest factors, let alone do so decisively.

The final two factors favored the Government in the initial analysis; they favor the Government even more strongly now that Plaintiffs seek an injunction pending appeal. The "sound disposition" is to deny to the motion.

*     *     *

## CONCLUSION

The Court should deny the motion for an injunction pending appeal.


Dated: May 19, 2025
      Washington, DC               Respectfully submitted,

                                  JEANINE FERRIS PIRRO
                                  United States Attorney

By:    */s/ Kartik N. Venguswamy*
                                  KARTIK N. VENGUSWAMY
                                  D.C. Bar No. #983326
                                  Assistant United States Attorney
                                  601 D Street, NW
                                  Washington, D.C. 20530
                                  Tel: (202) 252-1790
                                  kartik.venguswamy@usdoj.gov

                                  *Attorneys for the United States of America*