UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **COALITION FOR HUMANE IMMIGRANT RIGHTS**, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**U.S. DEPARTMENT OF HOMELAND SECURITY**, et al.,<br><br>Defendants. | Case No. 1:25-cv-00943 (TNM) |

**MEMORANDUM ORDER**

Advocacy organizations serving immigrant communities move for an injunction pending their appeal of this Court's denial of their motion for preliminary injunction. They again seek to halt an interim final rule issued by the Department of Homeland Security that creates a universal registration form for aliens. But the relief Plaintiffs seek is intentionally hard to come by. And they have not shown they will suffer irreparable harm without it. So the Court will not stop the executive branch from carrying out its duties during this litigation.

**I.**

For a more thorough version of the facts, the Court points to its previous Memorandum Order denying Plaintiffs' motion for a preliminary injunction. *See Coal. for Humane Immigrant Rts. v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-00943 (TNM), — F. Supp. 3d. —, 2025 WL 1078776, at *1–3 (D.D.C. Apr. 10, 2025). The gist of this dispute is as follows: In January 2025, the Department of Homeland Security published an Interim Final Rule creating a new registration form for illegal aliens, Form G-325R. *See* 90 Fed. Reg. 11793, 11795–96, 11800. This form filled a decades-long gap between statute and regulation.

Since 1940, immigration *statutes* have required aliens (excluding foreign government officials and their families) who are 14 years or older and have been in the country for at least 30 days to register and be fingerprinted. *See* Alien Registration Act of 1940, Pub. L. No. 76-670, 54 Stat. 670, 673–74 (codified at 8 U.S.C. § 451) (repealed 1952); Immigration and Nationality Act, Pub. L. No. 82-414, §§ 261–64, 66 Stat. 163, 223–25 (codified at 8 U.S.C. §§ 1201(b), 1301–1306) (1952). And for decades, the statutes have also required adult aliens to carry proof of registration "at all times." 8 U.S.C. § 1304(e). The "willful failure" to register or be fingerprinted is a crime punishable by a fine or up to six months of imprisonment. *Id.* § 1306(a).

The regulations have not always tracked. Over the years, immigration authorities have narrowed the list of registration forms. So the only available path to registration has been through preexisting forms that are only available to aliens with *legal* status, like the I-151 for lawful permanent residents or the Form I-94 for aliens with a record of lawful entry. *See* 15 Fed. Reg. 579, 579–80 (Feb. 2, 1950); 17 Fed. Reg. 11532, 11533 (Dec. 19, 1952). This means "the only aliens who are registered are those with legal immigration status; the regulations do not include a nondiscretionary registration form for an alien who entered illegally." *Coal. for Humane Immigrant Rts.*, 2025 WL 1078776, at *2.

The Form G-325R provides a pathway to registration for illegal aliens. Before it took effect, Plaintiffs filed this suit, seeking a stay of the effective date of the Interim Final Rule or, in the alternative, a preliminary injunction. *See* Mot. Stay, ECF No. 4, at 1. They argued the Interim Final Rule violates the Administrative Procedure Act. Compl., ECF No. 1, ¶¶ 103–09. Plaintiffs are a handful of nonprofit organizations serving immigrant communities: the Coalition for Humane Immigrant Rights Los Angeles (CHIRLA), United Farmworkers of America, Make

the Road New York, and CASA. *See* Compl. ¶¶ 6–13. These organizations are member-based and comprise many aliens and citizens who belong to mixed-status families.

The Court declined to grant the "extraordinary and drastic remedy" of a preliminary injunction. *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). It found that Plaintiffs failed to meet their burden to show standing. *Coal. for Humane Immigrant Rts.*, 2025 WL 1078776, at *3. As for organizational standing, the Court concluded that CHIRLA—the only entity asserting organizational standing—had alleged "highly speculative" injuries that "sound[ed] in prospective fears." *Id.* at *5. More, the Court stressed that "CHIRLA [could not] demonstrate that the Interim Final Rule has 'perceptibly impaired' its mission." *Id.* (quoting *Nat'l Ass'n of Home Builders v. E.P.A.*, 667 F.3d 6, 12 (D.C. Cir. 2011)). Instead, CHIRLA had merely "expand[ed] its operations to address increased demands in the communities it serves." *Id.*

The same went for associational standing. First, the Court stressed that Plaintiffs failed to adduce sufficient evidence to support their claims that their individual members had standing to challenge the Interim Final Rule. *Id.* at *6. Because the "only allegations of concrete harm to individual members that Plaintiffs present[ed] [were] in the form of pseudonymous hearsay" that were themselves "contained in affidavits submitted by the organizations," "all the Court ha[d] to go on [was] hearsay-within-hearsay." *Id.* The Court declined to find standing based on double hearsay that "innately lack[ed] credibility." *Id.* at *7.

Plus, even if it did credit the evidence, Plaintiffs failed to meet their standing burden. The Court explained how "Plaintiffs' primary conception of their members' injury is that the members are 'directly regulated parties.'" *Id*. Yet, Plaintiffs cited no case law postdating *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), to persuade the Court that mere regulation

3

sufficed as a concrete injury. *Id.* Nor did Plaintiffs explain how simply being subject to a regulation satisfied the *TransUnion* test. *Id.*

More, the Court rejected Plaintiffs' attempts to derive standing from asserted constitutional harms. Their Fifth Amendment allegations faltered because "any claims that the members risk a violation of their right against self-incrimination [were] speculative and premature," given Plaintiffs did not "allege that any of their members ha[d] actually invoked their Fifth Amendment right, only to be rebuffed." *Id.* at 10. And their assertions that Form G-325R chilled their members' speech failed, as "allegations of a subjective chill are not adequate" to confer standing. *Id.* at 10 (quoting *United Presb'n Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984)). Because Plaintiffs did not show that their members "face[d] a credible threat of prosecution *for their speech* under a statute that appears to render their arguably protected speech illegal," the First Amendment could not undergird their standing claims. *Id.* (cleaned up).

Plaintiffs appealed the denial of the preliminary injunction, without seeking an emergency stay. Not. Appeal, ECF No. 43. Concurrently, they filed the present motion for an injunction pending appeal. Mot. Inj. Pending Appeal, ECF No. 42. With the motion, they file a dozen affidavits from their members. *See* Decls., ECF Nos. 42-3–42-14. The Government timely filed its opposition. Mem. Opp'n, ECF No. 45. The motion is now ripe for review.

## II.

Rule 62(d) of the Federal Rules of Civil Procedure governs injunctions pending appeal. The standards for evaluating such a motion are "substantially the same as those for issuing a preliminary injunction," meaning the movant must show that (1) "they are likely to succeed on the merits," (2) "they are likely to suffer irreparable harm in the absence of preliminary relief,"

(3) the balance of equities tips in their favor," and (4) "an injunction is in the public interest." *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 324 (D.D.C.), *aff'd in part*, 755 F. App'x 1 (D.C. Cir. 2018) (per curiam).

While these motions are unusual, the plain language of Rule 62(d) "contemplates the possibility that the district court may grant an injunction pending appeal from an interlocutory order denying preliminary injunction." *MediNatura, Inc. v. Food & Drug Admin.*, 2021 WL 1025835, at *6 (D.D.C. Mar. 16, 2021); *see* Fed. R. Civ. P. 62(d) ("While an appeal is pending from an interlocutory order . . . that . . . refuses . . . an injunction, the court may . . . grant an injunction."). Namely, "in rare cases, the threat of irreparable harm may be so grave and the balance of equities may favor a plaintiff so decisively that an injunction pending appeal of a difficult or novel legal question may be proper." *MediNatura, Inc.*, 2021 WL 1025835, at *6. Affirmative injunctions—rather than stays—are especially disruptive and will be granted only sparingly lest Rule 62(d) undermine Rule 65. *Id.*

### III.

The Court denies the motion for an injunction pending appeal. Although Plaintiffs have remedied the Court's concerns about associational standing, they still fail to show irreparable harm. Given irreparable harm is an independent requirement for equitable relief, the Court will not provide the relief Plaintiffs seek.

### A.

Begin with standing. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) ("likelihood of success on the merits" encompasses "a substantial likelihood of standing."). On the second go-round, Plaintiffs have met their burden to show their members possess a "personal stake" in the case. *Raines v. Byrd*, 521 U.S. 811, 819 (1997).

Associational standing permits an organization to bring suit on behalf of its members where its members "would otherwise have standing to sue in their own right"; where "the interests it seeks to protect are germane to the organization's purpose"; and where "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiffs have smoothened the stumbling blocks of the past; they now successfully assert associational standing.

First, they have resolved the evidentiary issues that plagued their preliminary injunction motion. They have submitted a dozen affidavits from their members describing how the regulation affects them. *See, e.g.*, Ana Decl., ECF No. 42-3, ¶ 9 ("I am fearful of getting arrested and sent to jail because I am not able to complete the form."); Gloria Decl. ¶ 11 ("I am fearful I will not be able to complete the registration properly or assist my minor son with it and that I could be arrested and separated from my family."). Thus the Court no longer must rely on pseudonymous double-hearsay to assess the "irreducible constitutional minimum" of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Second, they have met their legal burden to explain that mere subjection to regulation confers a concrete injury, even following *TransUnion*. *See Coal. for Humane Immigrant Rts.*, 2025 WL 1078776, at *7. On this do-over, Plaintiffs present sufficient facts and case law that shows their members suffer an injury in fact by being "directly regulated parties." Mot. Inj. Pending Appeal at 6; *see Corbett v. Transportation Security Admin.*, 19 F.4th 478, 483 (D.C. Cir. 2021) (holding that a frequent flyer challenging TSA plane mask mandate had standing to argue that the mandate was ultra vires); *Arizona v. Env't Prot. Agency*, 77 F.4th 1126, 1131 (D.C. Cir. 2023) (noting that in "cases involv[ing] rules that constrain[] what regulated parties can lawfully

do," "there is ordinarily little question of standing if the complainant is himself an object of the rule in question."). They also meet their burden to situate this injury in the *TransUnion* framework. Mot. Inj. Pending Appeal at 6.

Thus the first element of the *Hunt* test for associational standing is satisfied.

The latter two elements of the *Hunt* test are not difficult. Clearly the interests Plaintiffs seek to protect by filing this suit are germane to their purposes. *Hunt*, 432 U.S. at 343. Plaintiffs aim to improve the lives, protect the rights, and aid the needs of the immigrant communities they serve. Salas Decl., ECF No. 4-2, ¶¶ 2–4; Strater Decl., ECF No. 4-3, ¶¶ 5–6; Fontaine Decl., ECF No. 4-5, ¶¶ 3–4; Escobar Decl., ECF No. 4-4, ¶¶ 8–9. They see Form G-325R as imposing harms on the communities they aim to protect. And finally, this suit does not require the individual participation of Plaintiffs' members. *Hunt*, 432 U.S. at 343. "Member participation is not required where a suit raises a pure question of law"—and here, Plaintiffs bring solely legal claims under the APA. *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 597 (D.C. Cir. 2015) (cleaned up). Plaintiffs have accordingly remedied the previous shortcomings identified by the Court for their showing of associational standing.[1]

### B.

But just because Plaintiffs' members suffered an injury-in-fact does not mean they are experiencing *irreparable* harm. The Circuit has stated "time and time again that the degree of proof required for irreparable harm is high." *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 529 (D.C. Cir. 2019) (cleaned up). The injury "must be both certain and great; it must

---

[1] "To establish jurisdiction, the court need only find one plaintiff who has standing." *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014). Still, the Court adopts in full its findings from the previous Order that CHIRLA lacks organizational standing. *Coal. for Humane Immigrant Rts.*, 2025 WL 1078776, at *6. More, since none of the organizations have suffered a cognizable injury, none of their asserted harms can be the basis for a finding of irreparable injury, either. *See Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1508 (D.C. Cir.), *opinion amended on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995).

be actual and not theoretical and of such imminence that there is a clear and present need for equitable relief." *Id.* This burden is not insurmountable. But it does ensure that the purposefully extraordinary remedy of an injunction is withheld until grave injury is banging on a movant's door.

Plaintiffs have a few different theories for why their members will suffer irreversible injury in the absence of equitable relief. But none of these theories avails.

First, they insist that their members "do not speak English and have difficulty accessing the Internet, putting them at imminent risk of prosecution and detention for failure to register." Mot. Inj. Pending Appeal at 16 (citing Ana Decl. ¶¶ 5, 8; Gloria Decl. ¶¶ 7, 9). But this does not suffice to show irreparable harm. For one, "the mere threat of potential future prosecution is insufficient to establish irreparable harm for exercising equitable jurisdiction." *Lindell v. United States*, 82 F.4th 614, 620 (8th Cir. 2023). If the rule were otherwise, "the district court's exercise of its equitable jurisdiction would not be extraordinary, but instead quite ordinary," as "every potential defendant could point to the same harm and invoke the equitable powers of the district court." *Id.*; *accord D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019); *Ramsden v. United States*, 2 F.3d 322, 326 (9th Cir. 1993).

More, Plaintiffs have not shown that actual prosecution and detention is imminent for any one of their members. True, they file a handful of criminal complaints to show that prosecutions have begun for failure to register in a couple of jurisdictions. *See* Criminal Complaints, ECF No. 42-2. But there is no averment that the aliens charged are members of Plaintiffs' organizations. And these criminal complaints were filed in Arizona and Louisiana. *See generally id.* None of Plaintiffs' members who submitted affidavits reside in these states. The fact that a few U.S.

Attorneys have filed a clutch of charges against non-members elsewhere in the country says little about any danger CHIRLA's members face.

In short, numerous steps—many involving discretion and randomness—would have to occur before one of Plaintiffs' members was subject to prosecution. But there is no proof that even a single step has been taken toward that end. Thus while Plaintiffs' motion "establishes that [their members] may suffer irreparable harm at some point in the future, there is no indication that the harm is imminent." *White v. Florida*, 458 U.S. 1301, 1302 (1982).

Second, Plaintiffs gesture toward an informational harm they claim is irreparable. They argue that members "must undergo the G-325R process to register and provide far more information to the government" than they had to under other immigration forms. Mot. Inj. Pending Appeal at 16. And Plaintiffs stress that "the G-325R process contains none of the statutory confidentiality provisions" that other registration avenues provide, such as the U-Visa and the Violence Against Women Act. *Id.* According to Plaintiffs, their members "face irreparable harm from the IFR's requirement to provide personal information that Defendants explicitly intend to use for immigration enforcement." *Id.*

Plaintiffs cite no case law to support their argument. And the Court is unaware of any circuit or Supreme Court precedent that finds the provision of personal data to government officials to be an irreparable injury. Instead, courts evaluating informational harm as irreparable typically require *dissemination* of that information to the public or private individuals who are under no obligation to safeguard it, like a private information broker or a competitor. *Univ. of Cal. Student Ass'n v. Carter*, 766 F. Supp. 3d 114, 121 (D.D.C. 2025). Plaintiffs do not even allege that the data is at risk being disseminated or misused—only that sharing the data with the Government for legitimate reasons is *itself* an irreparable injury. But courts in this district have

"consistently declined" to find irreparable injury in the absence of a threat of leakage. *All. for Retired Americans v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 740401, at *21 (D.D.C. Mar. 7, 2025) (cleaned up); *see also Ashland Oil, Inc. v. F.T.C.*, 409 F. Supp. 297, 308 (D.D.C.), *aff'd*, 548 F.2d 977 (D.C. Cir. 1976) (holding plaintiff failed to show irreparable harm where his data was shared with a congressional subcommittee and there was no imminent threat of "public dissemination or disclosure to [plaintiff's] competitors."). "Under th[e]se circumstances, a court can fashion adequate corrective relief after the fact," if it comes to that. *Bessent*, 2025 WL 740401, at *21.

Finally, Plaintiffs try to raise a couple of constitutional injuries to make their showing of irreparable harm. But these attempts fall flat.

For one, they claim their members are irreparably harmed because Form G-325R chills their First Amendment activity by requiring them to disclose their organizing and advocacy work. Mot. Inj. Pending Appeal at 16. But there is a crucial mismatch here. Plaintiffs expressly state that they are not bringing constitutional claims, only claims under the APA. *Id.* at 8. The Court is unaware of any cases—outside of narrow, speech-related employment law disputes[2]—where "chilling" suffices as irreparable harm when no First Amendment violation has been alleged. Indeed, courts evaluating chill-as-irreparable-harm often acknowledge that the inquiry is inextricably intertwined with the viability of a First Amendment claim. That is, courts recognize that plaintiffs are unlikely to be chilled unless they are likely to be successful on their claim that the challenged governmental action violated the First Amendment. *See, e.g.*, *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 511 (4th Cir. 2002) ("In this case, as the district court recognized, the irreparable harm that Carandola alleged is inseparably linked to its claim of

---

[2] *See, e.g.*, *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 91 (2d Cir. 1983).

10

violation of First Amendment rights. Determination of irreparable harm thus requires analysis of Carandola's likelihood of success on the merits."); *Blum v. Schlegel*, 830 F. Supp. 712, 724 (W.D.N.Y. 1993), *aff'd*, 18 F.3d 1005 (2d Cir. 1994) ("A showing of a chilling effect must amount to a clearcut infringement of first amendment rights which, absent preliminary injunctive relief, either has occurred or will occur in the future."). In short, a plaintiff cannot willy nilly allege a chilling of her speech without alleging a concomitant violation of her First Amendment rights. *See Wagner v. Taylor*, 836 F.2d 566, 576 n.76 (D.C. Cir. 1987) ("[T]he finding of irreparable injury cannot meaningfully be rested on a mere contention of a litigant, but depends on the appraisal of the validity, or at least the probable validity, of the legal premise underlying the claim of right in jeopardy of impairment."). Because Plaintiffs have expressly disclaimed any constitutional challenge, this attempt at irreparable harm must fail.

Plaintiffs also insist their members will suffer irreparable harm by being forced to disclose charged and uncharged criminal conduct on the Form G-325R. Mot. Inj. Pending Appeal at 8, 17. According to Plaintiffs, this burdens their members' Fifth Amendment rights against self-incrimination. *Id.* But for the reasons stated in the Court's prior opinion, this argument is bootless. Again, "a Fifth Amendment self-incrimination claim is not ripe until a claim of the privilege is actually made." *Carman v. Yellen*, 112 F.4th 386, 404 (6th Cir. 2024). But there is no allegation that any of their members have sought to invoke their right, or that penalties would accompany such an invocation. "At this point, then, any claims that the members risk a violation of their right against self-incrimination are speculative and premature." *Coal. for Humane Immigrant Rts.*, 2025 WL 1078776, at *10. Without even a ripe injury to their members, Plaintiffs cannot assert that there is an irreparable one.

\* \* \*

Plaintiffs could not have met their burden to show irreparable harm even if this were a motion for preliminary injunction. But Rule 62(d) suggests that the demand is higher still when a party is seeking a stay pending the appeal of a denial of a preliminary injunction. *Accord MediNatura, Inc.*, 2021 WL 1025835, at *6 ("[I]n rare cases, the threat of irreparable harm may be *so grave* and the balance of equities may favor a plaintiff so decisively than an injunction pending appeal of a difficult or novel legal question may be proper.") (emphasis added). Plaintiffs have not shown that irrevocable and irremediable injury has come knocking. Indeed, they never moved for an emergency stay of the Court's prior order, suggesting that no such emergency exists. This alternative effort to seek a do-over in this Court is permissible, but disfavored. Put simply, Plaintiffs are not entitled to this form of extraordinary relief.

## IV.

In short, though Plaintiffs' members have experienced a concrete injury by virtue of incurring new legal obligations under the Rule, Plaintiffs have not shown an imminent *irreparable* injury. Because that is a freestanding requirement for the issuance of an injunction, the Court will not exercise its equitable authority here. Plaintiffs' [42] Motion for Injunction Pending Appeal is accordingly **DENIED.**

**SO ORDERED.**

Dated: June 12, 2025                                    TREVOR N. McFADDEN, U.S.D.J.